WRIGHT v RESTAURANT CONCEPT MANAGEMENT, INC

Docket No. 165676. Submitted February 9, 1995, at Lansing. Decided April 21, 1995, at 10:05 A.M.

Michael Wright brought an action in the Genesee Circuit Court against Thomas M. Charters and Restaurant Concept Management, Inc. (RCMI), alleging that he was wrongfully discharged from his employment as a restaurant manager in violation of the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, because he refused to comply with the defendants' directive to fire all the black employees. The court, Donald R. Freeman, J., granted summary disposition for the defendants, ruling that the plaintiff's failure to disclose a prior criminal conviction on his employment application, which failure was discovered by the defendants after they had discharged the plaintiff, provided just cause for termination and a defense to the action. The plaintiff appealed the grant of summary disposition for RCMI.

The Court of Appeals *held:*

An employee discharged in violation of the Civil Rights Act is not barred from relief under the act when, after discharge, the employer discovers evidence of wrongdoing that would have led to the employee's termination on lawful and legitimate grounds. Evidence of wrongdoing, however, may be considered in granting relief to the employee.

Reversed and remanded for trial.

CIVIL RIGHTS — CIVIL RIGHTS ACT — WRONGFUL DISCHARGE — EMPLOYEE MISCONDUCT DISCOVERED AFTER TERMINATION.

Relief under the Civil Rights Act for wrongful discharge is not foreclosed by reason of the employer's discovery after discharge of wrongdoing that would have led to the employee's termination on lawful and legitimate grounds; evidence of such wrongdoing, however, is relevant in fashioning any relief to be granted in an action for wrongful discharge (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

REFERENCES

Am Jur 2d, Job Discrimination § 1068.

See ALR Index under Civil Rights and Discrimination; Discharge from Employment or Office.

*Blum, Konheim, Elkin & Blum* (by *Loren D. Blum*), for the plaintiff.

*Charters, Heck & O'Donnell, P.C.* (by *Michael A. Heck*), for the defendants.

Before: FITZGERALD, P.J., and TAYLOR and MARKMAN, JJ.

MARKMAN, J. Plaintiff appeals that portion of the circuit court's order granting summary disposition in favor of defendant Restaurant Concept Management, Inc. (RCMI). We reverse.

On August 16, 1991, plaintiff filed in the Genesee Circuit Court a complaint alleging that he had been hired by defendants Thomas M. Charters and RCMI as a store manager "for the sole purpose of firing as many black employees that he could." Plaintiff further alleged "[t]hat after two black employees were terminated, plaintiff refused the defendant's instructions to wrongfully terminate the remaining black employees," and that, as a consequence, plaintiff's employment was terminated, in violation of the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and public policy.

Defendants moved for summary disposition on August 31, 1992. Defendants alleged that plaintiff, in applying for employment with defendants in 1990, had indicated that he had never been convicted of a crime other than a traffic offense although, in fact, he had been convicted of felonious assault in 1988. When the police attempted to arrest plaintiff for that offense, he engaged them in a six-hour standoff. Defendants discovered the misrepresentation on plaintiff's employment application only after plaintiff had been terminated.

Terry Pellman, who had hired and terminated

plaintiff on behalf of defendants, submitted an affidavit on August 31, 1992, indicating that Pellman had relied on plaintiff's claimed lack of a criminal record in hiring plaintiff. Pellman further indicated that he immediately would have terminated plaintiff if he had discovered plaintiff's misrepresentation during plaintiff's employment, particularly in light of the six-hour standoff with police. Plaintiff asserted in his answer to the motion that when he filled out his application for employment with defendants he believed that he had never been convicted of a crime other than a traffic offense because the dangerous weapon involved in his assault conviction was a recklessly driven automobile.

The trial court granted defendants' motion for summary disposition, dismissing all of plaintiff's claims against the defendants. The plaintiff appeals only that portion of the order granting summary disposition and dismissing plaintiff's claims against RCMI. With respect to plaintiff's claims against RCMI, the trial court reasoned that his criminal history and related misrepresentation clearly established just cause for his termination by defendants, and that as a result, plaintiff could obtain no relief in this action.

A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim. When deciding a motion for summary disposition, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence available to it. On appeal, a trial court's grant of summary disposition will be reviewed de novo, and this Court must determine whether the plaintiff was entitled to judgment as a matter of law. *Allen v Keating,* 205 Mich App 560, 562; 517 NW2d 830 (1994).

In granting summary disposition in favor of

defendants, the trial court relied heavily on *Johnson v Honeywell Information Systems, Inc,* 955 F2d 409 (CA 6, 1992). In *Johnson,* the Sixth Circuit Court of Appeals held that under Michigan law "an employer may rely upon an employee's false representations made at the time of employment, of which the employer was unaware, and which were not the grounds for the employee's discharge, as a just cause defense to the employee's wrongful discharge and state civil rights claims." *Id.* at 410-411. The employee's résumé fraud was held to entitle the employer to judgment as a matter of law with regard to the employee's claim of violations of the Civil Rights Act. *Id.* at 413-415.

The trial court further relied on *Bradley v Philip Morris, Inc,* 194 Mich App 44; 486 NW2d 48 (1992), affirmed after remand 444 Mich 634; 513 NW2d 797 (1994). In *Bradley,* former employees sued an employer for wrongful discharge. This Court found that the trial court had erred in excluding from trial "any evidence of previous [employee] misconduct that was discovered after [the plaintiffs'] employment was terminated." 194 Mich App 48. This Court reasoned:

> Evidence of employee misconduct occurring before termination is admissible as substantive evidence even if the former employer did not know of the misconduct until after the termination. Just cause for termination may include facts and circumstances existing at termination but not known to the employer. See 53 Am Jur 2d, Master and Servant, § 46, pp 120-121; *Leahey v Federal Express Corp,* 685 F Supp 127 (ED Va, 1988); *Summers v State Farm Mutual Automobile Ins Co,* 864 F2d 700, 708 (CA 10, 1988); and *Pugh v See's Candies, Inc,* 203 Cal App 3d 743; 250 Cal Rptr 195 (1988). Moreover, this type of evidence is relevant to the issue of damages. Having reviewed the record, we conclude that the trial court abused its

discretion in excluding this type of evidence and in not permitting defendants' attorney to make a corresponding argument to the jury. [194 Mich App 48.]

However, *Bradley* did not address the implications of such evidence for a claim brought under the Civil Rights Act.

The United States Supreme Court recently decided a similar issue involving the Age Discrimination in Employment Act (ADEA), 29 USC 621 *et seq.*, in *McKennon v Nashville Banner Publishing Co*, 531 US —; 115 S Ct 879; 130 L Ed 2d 852 (1995). In *McKennon*, the Court unanimously held that an employee discharged in violation of the ADEA is not barred from all relief when, after his discharge, the employer discovers evidence of wrongdoing that would have led to the employee's termination on lawful and legitimate grounds. The Court found that "a violation of the ADEA cannot be so altogether disregarded." 115 S Ct 884. The Court reasoned in part:

Deterrence is one object of [statutes establishing private causes of action for invidious employment discrimination]. Compensation for injuries caused by the prohibited discrimination is another. . . . The private litigant who seeks redress for his or her injuries vindicates both the deterrence and the compensation objectives of the ADEA. . . . It would not accord with this scheme if after-acquired evidence of wrongdoing that would have resulted in termination operates, in every instance, to bar all relief for an earlier violation of the Act.

\* \* \*

Our inquiry is not at an end, however, for even though the employer has violated the Act, we must consider how the after-acquired evidence of the employee's wrongdoing bears on the specific remedy to be ordered. . . . We have rejected the

unclean hands defense "where a private suit serves important public purposes." . . . That does not mean, however, the employee's own misconduct is irrelevant to all the remedies otherwise available under the statute. [115 S Ct 884-886. Citations omitted.]

During oral argument, in light of the recent decision in *McKennon*, RCMI expressly abandoned its argument that plaintiff's résumé fraud, although discovered after his termination, barred all relief under the Civil Rights Act.

Although the defendant no longer raises this issue, we find it appropriate to apply the United States Supreme Court's prohibition of an absolute bar to relief in this case. An employer should not be absolutely insulated from liability for violations of state civil rights laws because of the fortuitous discovery, after the employee's termination, of employee wrongdoing sufficient to have caused his termination. Although, as this Court has recognized, there may be differences between the Civil Rights Act and the ADEA, *Riethmiller v Blue Cross & Blue Shield of Michigan*, 151 Mich App 188, 198-199; 390 NW2d 227 (1986) (discussing the difference in the language used in the respective remedy provisions), we find nothing at all in the language of the former that would preclude application of the Supreme Court's logic to this action. Moreover, we find the Supreme Court's reasoning persuasive, and further find its objectives consistent with the purpose of the Civil Rights Act. As the Michigan Supreme Court has stated:

The Civil Rights Act is "aimed at 'the prejudices and biases' borne against persons because of their membership in a certain class, and seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases." *Miller v C A Muer*

*Corp,* 420 Mich 355, 363; 362 NW2d 650 (1984)
(citations omitted). [*Radtke v Everett,* 442 Mich
368, 379; 501 NW2d 155 (1993).]

The Supreme Court further noted in *Rasheed v
Chrysler Corp,* 445 Mich 109, 125-126; 517 NW2d
19 (1994):

> Over the years, various legislatures and the
> courts have added certain restrictions to the con-
> tractual relationship between employer and em-
> ployee in cases where ordinary contract law did
> not adequately protect important rights of the
> parties. Examples are the law on discriminatory
> discharge, which has been the topic of numerous
> regulations, guidelines on the right of labor to
> organize, and even rules concerning compensation
> for work-related injuries.

The Supreme Court included "the Michigan Fair
Employment Practices Act, MCL 423.301 *et seq.*;
MSA 17.458(1) *et seq.* (since repealed and replaced
by the Michigan Civil Rights Act)" as one example
of "numerous regulations." *Id.* at 125, n 22. Unlike
in *Bradley,* where an alleged violation of civil
rights was not at issue and contract law may well
have served to adequately protect the employee, a
claim of violation of civil rights should not be
barred solely because of employee wrongdoing that
could not possibly have been the reason for the
employee's discharge.

Although such wrongdoing, to the extent it ex-
ists, does not constitute an absolute bar to all
relief, this does not mean that the relief afforded
the employee should be unaffected by the wrongdo-
ing or that the wrongdoing should be ignored. In
*McKennon,* the Court further observed:

> [A]s a general rule in cases of this type, neither

reinstatement nor front pay is an appropriate remedy. It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds.

The proper measure of backpay presents a more difficult problem. . . . Once an employer learns about employee wrongdoing that would lead to a legitimate discharge, we cannot require the employer to ignore the information, even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit. The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered. [115 S Ct 886.]

Although the plaintiff in this action is not barred from all relief as a matter of law, any wrongdoing on his part may be reflected in the relief awarded to him. As the Supreme Court articulated:

The proper boundaries of remedial relief in the general class of the cases where, after termination, it is discovered that the employee has engaged in wrongdoing must be addressed by the judicial system in the ordinary course of further decisions, for the factual permutations and the equitable considerations they raise will vary from case to case. [115 S Ct 886.]

To the extent RCMI is liable for plaintiff's claims under the Civil Rights Act and to the extent RCMI has established wrongdoing by the plaintiff that would have led to his lawful termination in any event once discovered by the defendant, evidence of the wrongdoing should be considered in granting relief based on the "factual permutations and the equitable considerations" raised and in light of

the remedies available under the Civil Rights Act.[1] This approach precludes the exoneration of either wrongdoer while preserving the statutory goal of deterring discrimination.

Reversed and remanded for a trial on the merits. We do not retain jurisdiction.

---

[1] While the effect of any such wrongdoing by the employee will vary with the facts and circumstances of the case, we agree with the general guidance provided by the United States Supreme Court with respect to certain remedies. To the extent that future damages or reinstatement would otherwise be available to plaintiff, we agree that as a general rule in cases of this type, neither reinstatement nor front pay is an appropriate remedy. *McKennon,* 115 S Ct 886; see also *Rasheed, supra* at 144, n 8 (separate opinion by Justice LEVIN). We further find the Court's general calculations of backpay appropriate, more particularly, from the date of unlawful discharge to the date the new information was discovered. *McKennon,* 115 S Ct 886.