SMITH v UNION CHARTER TOWNSHIP (ON REHEARING)

Docket No. 187677. Submitted November 5, 1996, at Lansing. Decided September 16, 1997. Submitted on rehearing October 28, 1997. Decided on rehearing January 16, 1998, at 9:10 A.M.

Walter E. Smith, Jr., brought an action in the Isabella Circuit Court against Union Charter Township and others, alleging, in part, racial discrimination in violation of the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, with respect to the defendants' failure or refusal to hire the plaintiff as township manager/utility manager. In seeking applicants for the job, the defendants had advertised that a professional engineering degree or engineer in training status was required. During discovery, the defendants learned that the plaintiff had submitted a resumé that falsely stated that he was a college graduate with experience in managing a public utility. The defendants moved for summary disposition of the civil rights claim. The court, James E. Wilson, J., granted the motion. The Court of Appeals, SMOLENSKI, P.J., and MARKMAN and T. G. POWER, JJ., in an unpublished opinion per curiam and a concurring opinion by T. G. POWER, J., issued September 16, 1997 (Docket No. 187677), reversed and remanded, holding that the trial court erred in concluding that the position required a professional engineering degree, an equivalent degree, or engineer in training status and erred in concluding that the plaintiff's resumé fraud precluded him from maintaining the civil rights claim. The Court of Appeals subsequently granted the defendants' motion for a rehearing.

On rehearing, the Court of Appeals *held*:

Wrongdoing by a job applicant, such as resumé fraud, that is discovered by an employer after rejecting the applicant and that would have led to the employee's rejection on lawful and legitimate grounds does not bar the applicant from relief under the Civil Rights Act for wrongful failure or refusal to hire. Where the resumé fraud relates to core qualifications for the position, it can be presumed that the employer would have quickly discovered the applicant's lack of qualifications such that the applicant, if successful with regard to the civil rights claim, would be entitled to damages limited to backpay from the date of failure or refusal to hire to the date of discovery of the wrongdoing.

Order of partial summary disposition vacated; case remanded for further proceedings.

CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — WRONGFUL FAILURE OR REFUSAL TO HIRE — SUBSEQUENTLY DISCOVERED WRONGDOING BY APPLICANT.

Wrongdoing by a job applicant, such as resumé fraud, that is discovered by an employer after rejecting the applicant and that would have led to the employee's rejection on lawful and legitimate grounds does not bar the applicant from relief under the Civil Rights Act if the failure or refusal to hire was unlawful under the act (MCL 37.2202; MSA 3.548[202]).

*Constance Y. Ross*, for the plaintiff.

*Foster, Swift, Collins & Smith, P.C.* (by *Kevin McGraw* and *Stephen J. Rhodes*), for the defendants.

Before: SMOLENSKI, P.J., and MARKMAN and T. G. POWER*, JJ.

PER CURIAM. Plaintiff appeals as of right an order granting partial summary disposition to defendants pursuant to MCR 2.116(C)(10).[1] In our initial opinion, *Smith v Union Charter Twp*, unpublished opinion per curiam of the Court of Appeals, issued September 16, 1997 (Docket No. 187677), we reversed and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Defendants contend that plaintiff's claim of appeal was not timely. A challenge to subject-matter jurisdiction may be raised at any time. *Smith v Smith*, 218 Mich App 727, 729-730; 555 NW2d 271 (1996). Whether a court has subject-matter jurisdiction is a question of law that is reviewed de novo. *Id.* at 729. Here, we conclude that plaintiff's claim of appeal was timely. Although the order denying plaintiff's motion for reconsideration was signed on June 15, 1995, there was no "entry," as that term is defined in MCR 7.202(3), of this order until it was placed into the file and records of the lower court, which occurred on June 23, 1995, as evidenced by the date stamp on the order. Cf. MCR 2.001 and 2.602(A). Plaintiff's claim of appeal was then filed on July 13, 1995, i.e., within twenty-one days after the entry of the order denying plaintiff's motion for reconsideration. See MCR 7.204.

remanded. Defendants moved for rehearing.[2] We hereby grant defendants' motion for rehearing and vacate our initial opinion. We now vacate and remand.

Defendant Union Charter Township advertised for candidates for an employment position entitled "Township Manager/Utility Manager," which position required, in part, "PE [Professional Engineering Degree] or EIT [Engineer in Training status] with business management background or equivalent, plus local government experience. Responsible for management of water and sewer utilities . . . ." Plaintiff, a black male, submitted a resumé indicating that he had both a "B.S., Business Administration," and an associate of arts degree. Plaintiff's resumé listed three employers and indicated that he had management experience. With respect to one employer, plaintiff's resumé indicated that he had experience in the public sector supervising civil engineering projects, including the construction, maintenance, and repair of water and sewage lines.

Plaintiff and Wayne Zdrojkowski, a white male, emerged as finalists for the position. Defendant township offered the position to Zdrojkowski, who ultimately refused the offer. Defendant township did not offer the position to plaintiff and, instead, continued searching for candidates to fill the position.

Plaintiff filed suit against defendant township and certain township officials, alleging, in relevant part, a

---

[2] While we grant defendants' motion for rehearing, we feel obligated nonetheless to note that defendants' counsel's (inaccurate, in our judgment) characterization of an article in Michigan Lawyers Weekly in support of their position has not reflected well upon their cause and is highly inappropriate as a "legal argument" before this Court.

claim of racial discrimination under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* During discovery, defendants learned that plaintiff had falsified parts of his resumé. Specifically, defendants discovered that plaintiff had only a general equivalency diploma (GED) with no college credits, and that he had little or no experience in designing, managing, operating, constructing, or maintaining a public utility.

Defendants moved for summary disposition, which motion the trial court granted. First, the court noted that the employment advertisement plaintiff had answered required a "PE or EIT . . . or equivalent," and that "the equivalent refers to an equivalent degree in PE or EIT." The court indicated that it had reviewed plaintiff's resumé, and found as fact that plaintiff was not qualified for the employment position.[3] The court made clear that this ground for its grant of summary disposition did not turn on plaintiff's resumé fraud. Second, and alternatively, the court, noting that there was no Michigan law on this particular issue, found as a matter of law that plaintiff could not maintain his cause of action because of his resumé fraud.

This Court reviews decisions on motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law. *Stehlik v Johnson (On Rehearing)*, 206 Mich App 83, 85; 520 NW2d 633 (1994).

---

[3] Defendants contend that even if a question of fact remains concerning the exact nature of the qualifications for the manager's position, plaintiff still cannot satisfy the qualifications requirement where plaintiff is "indisputably unqualified to manager either the Township or its utilities" because he possesses only a GED with no college credits and lacks "any work experience that would even make him close to being qualified."

MCR 2.116(C)(10) permits summary disposition when, except for the amount of damages, there is no genuine issue concerning any material fact and the moving party is entitled to [judgment] as a matter of law. A court reviewing such a motion must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the opposing party and grant the benefit of any reasonable doubt to the opposing party. [*Id.*]

Under the Civil Rights Act, an employer is prohibited from failing or refusing to hire an individual because of race. MCL 37.2202; MSA 3.548(202). The parties agree that *Carden v General Motors Corp*, 156 Mich App 202, 210; 401 NW2d 273 (1986), sets forth the applicable elements of a prima facie case of racial discrimination in the context of a refusal to hire:

The Plaintiff has the burden of proving the following:

(1) That he belonged to a racial minority;

(2) That he applied and was qualified for a job for which the employer was seeking applicants;

(3) That, despite his qualifications, he was rejected.

See also *Matras v Amoco Oil Co*, 424 Mich 675, 683-684; 385 NW2d 586 (1986).

This Court recently held that an employee discharged in violation of the Civil Rights Act is not barred from all relief when, after his discharge, the employer discovers evidence of wrongdoing that would have led to the employee's termination on lawful and legitimate grounds. *Wright v Restaurant Concept Management, Inc*, 210 Mich App 105, 109-110; 532 NW2d 889 (1995) (citing *McKennon v Nashville Banner Publishing Co*, 513 US 352; 115 S Ct 879; 130

L Ed 2d 852; [1995]),[4] see also *Horn v Dep't of Corrections*, 216 Mich App 58; 548 NW2d 660 (1996). "An employer should not be absolutely insulated from liability for violations of state civil rights laws because of the fortuitous discovery, after the employee's termination, of employee wrongdoing sufficient to have caused his termination." *Wright, supra* at 110. Rather, any wrongdoing on the employee's part may be reflected in the relief awarded. *Id.* at 111-112. Where evidence of employee misconduct is subsequently discovered in a discriminatory discharge case, reinstatement and front pay are generally not appropriate remedies. *McKennon, supra; Wright, supra* at 111-113. With respect to an award of backpay in such cases, "[t]he beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered." *McKennon, supra; Wright, supra* at 112. However, the relief ultimately accorded in such cases depends on the " 'factual permutations and the equitable considerations' raised and in light of the remedies available under the Civil Rights Act." *Wright, supra* at 112-113 (quoting *McKennon, supra*). "This approach precludes the exoneration of either wrongdoer while preserving the statutory goal of deterring discrimination." *Id.* at 113.

Unlike *McKennon, Wright,* and *Horn,* which involved wrongful termination, the present case involves an alleged wrongful failure to hire. The applicability of the after-acquired evidence rule to the present case is a legal question that is reviewed de

---

[4] The trial court did not have the benefit of either *Wright, supra,* or *McKennon, supra,* at the time it decided defendants' motion for summary disposition.

novo. *Horn, supra* at 66. We find nothing in the logic of either the Supreme Court's opinion in *McKennon* or this Court's opinion in *Wright* that would preclude application of those cases to failure to hire cases. See *Wright, supra* at 110.[5] However, one important distinction between wrongful discharge and failure to hire cases that bears on the appropriate remedy is the employer's ability to observe the plaintiff working. In wrongful discharge cases, the employer has had the opportunity and incentive to monitor whether the plaintiff is qualified for the position during the time the plaintiff has worked for the employer. Accordingly, in awarding damages, it is appropriate that the starting point in calculating backpay be from the date of the discharge through the date the employer actually discovers the resumé fraud. However, in failure to hire cases, the employer has had no similar opportunity to observe the plaintiff working and thereby to discover resumé fraud relating to the plaintiff's qualifications for the position. Accordingly, in applying the remedy guidelines set forth in these cases to the failure to hire context, we believe that the starting point should be calculation of backpay from the date of the unlawful employment action to the date that the defendant would reasonably have discovered the

---

[5] See also *Blong v West*, 886 F Supp 1576 (D Kan, 1995), aff'd 86 F3d 1166 (CA 10, 1996) (indicating that the Supreme Court's opinion in *McKennon* would apply in a gender discrimination case consisting of an alleged wrongful failure to hire); *Perkins v Brigham & Women's Hosp*, 78 F3d 747, 751 (CA 1, 1996) ("[A]n employer cannot avoid liability in a discrimination case by exploiting a weakness in an employee's credentials . . . that was not known to the employer at the time of the adverse employment action [and that, therefore, could not have figured in the decisional calculus].")

plaintiff's misrepresentations if he had been hired.[6] Where the resumé fraud relates to core qualifications for the position, for example, it can be presumed that the employer would have quickly discovered the plaintiff's lack of qualifications and, therefore, the resumé fraud if the plaintiff had started working for the employer.

Here, plaintiff is seeking recovery for alleged discrimination in violation of the Civil Rights Act despite his resumé fraud. The position at issue, Township Manager/Utility Manager, required specific technical expertise and experience. The specific false representations on plaintiff's resumé indicated that he was qualified for the position in question, when, in fact, he was not. Because these false representations of expertise and experience involved core qualifications for the position, we are convinced that plaintiff's lack of such expertise would quickly have become apparent to defendants if plaintiff had attempted to perform the job. Accordingly, here, if plaintiff were to prevail in his civil rights action against defendants, he would be entitled to extremely limited damages because defendants would soon have discovered his lack of qualifications and, therefore, his resumé fraud had they hired him.

For these reasons, we vacate the trial court order granting defendants' motion for partial summary disposition and remand for further proceedings consistent with this opinion.

---

[6] Under MCL 37.2802; MSA 3.548(802), courts have discretion to award costs, including attorney fees, in civil rights actions. We presume that courts will exercise their discretion appropriately in considering in their decisions the extent of damages awarded to the plaintiff.