GROW v W A THOMAS COMPANY

Docket No. 209865. Submitted July 1, 1999, at Lansing. Decided August 6,
1999, at 9:00 A.M. Leave to appeal sought.

Shirley A. Grow brought an action in the Washtenaw Circuit Court
against W. A. Thomas Company and W. A. Thomas Company super-
visor Dennis Arquette, alleging liability under the Civil Rights Act,
MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and seeking damages
for constructive discharge and emotional distress for sexual dis-
crimination in the form of a hostile work environment. The court,
Melinda Morris, J., granted summary disposition for the defendants
with respect to the constructive discharge claim. A mediation panel
rendered an evaluation in favor of the plaintiff. The mediation eval-
uation was accepted by the plaintiff, but rejected by the defend-
ants. A jury returned a verdict for the plaintiff. The court entered a
judgment consistent with the verdict, and awarded interest, costs,
and attorney fees. The award of attorney fees was made pursuant
to the Civil Rights Act and the mediation court rule, MCR 2.403.
The defendants appealed.

The Court of Appeals *held*:

1. The trial court did not abuse its discretion in rejecting the
defendants' proposed jury instruction regarding how an employer
can avoid liability for a hostile work environment through adequate
investigation and prompt and remedial action. The trial court fairly
and accurately advised the jury of the applicable law by instructing
the jurors to determine whether W. A. Thomas Company, once it
knew or should have known of the alleged harassment by Arquette,
adequately investigated and implemented prompt and appropriate
corrective action.

2. The trial court did not abuse its discretion in rejecting portions
of the defendants' proposed jury instructions that dealt with unwel-
come sexual conduct or communication and an employee's partici-
pation in sexual conduct or communication. The proposed instruc-
tion concerning participation in sexual conduct or communication
would have incorrectly advised the jury that such participation,
standing alone, will defeat a claim of hostile work environment.
The trial court's instruction concerning unwelcome sexual conduct
or communication fairly and adequately stated the applicable law.

3. The trial court properly refused to instruct the jury that the plaintiff's damages for emotional distress should be limited as of the date the defendants discovered certain false statements on the plaintiff's employment application. Evidence of employee wrongdoing acquired after the employer has illegally discriminated against the employee may limit the amount of economic damages available to the employee, but may not limit the amount of damages for emotional distress. The purpose of the after-acquired evidence rule is to ensure that an employee does not benefit from the employee's own misconduct or misrepresentation in obtaining employment that otherwise would have been denied to the employee, a consideration not present where only damages for emotional distress are claimed.

4. The trial court did not abuse its discretion in excluding the testimony of a rebuttal witness for the defendants. Because the defendants did not file a counterclaim, they were not entitled to present rebuttal evidence after resting their defense. In any event, the proposed rebuttal testimony would have been cumulative to evidence already presented by other defense witnesses.

5. By not objecting at trial, the defendants failed to preserve their challenge to the plaintiff's testimony that she felt compelled to quit her job. The trial court properly refused to admit into evidence the order that dismissed the plaintiff's claim of constructive discharge. Such an admission could have caused juror confusion.

6. The trial court did not abuse its discretion in allowing the plaintiff's therapist to testify as an expert regarding posttraumatic stress disorder. The therapist, a certified social worker, was qualified to testify as an expert by virtue of his experience in counseling persons who suffered from the disorder. The fact that he was not a medical practitioner did not render him unqualified as an expert witness. Any limitations in his qualifications are relevant to the weight, not the admissibility, of his testimony.

7. The trial court did not abuse its discretion in awarding attorney fees to the plaintiff under the Civil Rights Act. The trial court clearly and carefully considered the results achieved and the existence of the contingent fee agreement in determining a reasonable attorney fee.

8. The trial court's award of attorney fees under the mediation court rule, MCR 2.403, must be vacated. A prevailing party may not recover an award of attorney fees under MCR 2.403 where the party has already been compensated for reasonable attorney fees under a fee-shifting statute like the Civil Rights Act.

9. The trial court properly awarded prejudgment interest on the entire judgment, including the award of costs and attorney fees.

MCL 600.6013; MSA 27A.6013, in providing that interest attributable to that part of the money judgment from which attorney fees are paid shall be retained by the plaintiff, does not render ambiguous its requirement that interest be calculated on the entire amount of the judgment, including attorney fees and costs.

10. The matter must be remanded for a determination of reasonable appellate attorney fees awardable to the plaintiff.

Affirmed in part, vacated in part, and remanded.

1. CIVIL RIGHTS — SEXUAL HARASSMENT — HOSTILE WORK ENVIRONMENT — EMPLOYERS — SUPERVISORS — AFFIRMATIVE DEFENSE.

An employer is vicariously liable for a supervisor's creation of a hostile work environment unless the employer can prove, by a preponderance of the evidence, that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior and that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise; this affirmative defense is not available where the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment (MCL 37.2101 et seq.; MSA 3.548[101] et seq.).

2. CIVIL RIGHTS — SEXUAL HARASSMENT — HOSTILE WORK ENVIRONMENT.

A plaintiff employee who claims hostile work environment must establish that the employee belonged to a protected group, that the employee was subjected to communication or conduct on the basis of sex, that the employee was subjected to unwelcome sexual conduct or communication, and that the unwelcome sexual conduct or communication was intended to or in fact substantially interfered with the employee's employment or created an intimidating, hostile, or offensive work environment, and must establish respondeat superior (MCL 37.2101 et seq.; MSA 3.548[101] et seq.).

3. CIVIL RIGHTS — SEXUAL HARASSMENT — HOSTILE WORK ENVIRONMENT — EMPLOYEE PARTICIPATION IN SEXUAL CONDUCT OR COMMUNICATION.

A plaintiff employee's participation in sexual behavior or comments, standing alone, does not necessarily defeat a claim of hostile work environment; such participation is merely a factor to consider when determining whether the conduct or comments were unwelcome (MCL 37.2101 et seq.; MSA 3.548[101] et seq.).

4. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — EMPLOYEE WRONGDOING — DAMAGES.

Evidence of wrongdoing by an employee that is acquired by the employer after the employer has illegally discriminated against the

employee may limit the amount of economic damages available to the employee for discrimination, but may not limit the amount of damages available for emotional distress (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

5. CIVIL RIGHTS — CIVIL RIGHTS ACT — ATTORNEY FEES.

A court determining a reasonable attorney fee to be awarded in an action brought pursuant to the Civil Rights Act considers the skill, time, and labor involved, the likelihood, if apparent to the client, that the acceptance of the employment will preclude other employment by the lawyer, the fee customarily charged in that locality for similar services, the amount in question and the results achieved, the expense incurred, the time limitations imposed by the client or the circumstances, the nature and length of the professional relationship with the client, the professional standing and experience of the attorney, and whether the fee is fixed or contingent (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

6. PRETRIAL PROCEDURE — MEDIATION — ATTORNEY FEES.

A prevailing party may not recover an award of attorney fees under the mediation court rule where the party has already been compensated for reasonable attorney fees under a fee-shifting statute (MCR 2.403).

7. CIVIL RIGHTS — CIVIL RIGHTS ACT — ATTORNEY FEES — APPELLATE ATTORNEY FEES.

The purpose of the Civil Rights Act provision for attorney fees is to encourage persons deprived of their civil rights to seek legal redress, to ensure victims of discrimination access to the courts, and to deter discrimination; appellate attorney fees may be awarded under the act (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

*Kurt Berggren*, for Shirley A. Grow.

*Barlow & Derby* (by *Matthew S. Derby* and *Christine R. Essique*), for W. A. Thomas Company and Dennis Arquette.

Amicus Curiae:

*Clark Hill P.L.C.* (by *Duane L. Tarnacki, J. Walker Henry*, and *Julie A. Lawson*), for Michigan Manufacturers Association.

Before: MURPHY, P.J., and DOCTOROFF and NEFF, JJ.

NEFF, J. Defendants W. A. Thomas Company (here-
after defendant) and Dennis Arquette appeal as of
right from the trial court's judgment for plaintiff in
this sexual harassment case involving an alleged hos-
tile work environment. We affirm in part, vacate the
judgment in part, and remand for further proceedings
consistent with this opinion.

I

Plaintiff began working for defendant in March
1994. Plaintiff testified that from the very beginning
Arquette, her supervisor, subjected her to continuous
sexual harassment. We do not deem it necessary to
describe in detail the specific conduct described by
plaintiff. It is sufficient to note that plaintiff testified
that Arquette's alleged conduct toward her included
sexually explicit comments and unwanted kissing and
groping. Plaintiff testified that she complained about
Arquette's conduct to another supervisor and to the
plant manager, and that these men personally wit-
nessed some of Arquette's sexual conduct in the
workplace, but that no action was taken to punish
Arquette for the sexual harassment or to prevent fur-
ther occurrences.

Plaintiff testified that after Arquette began berating
her for things such as her attitude, work output, and
attendance record, she quit. Plaintiff testified that
defendant sent her a copy of a newly formed sexual
harassment policy and ordered her to return to work.
Plaintiff complied, but found the harassment had
turned from sexual to something more hostile. After
four days back on the job, plaintiff quit again. She

described for the jury the emotional distress she suffered, including a suicide attempt and various physical ailments.

Defendants denied that plaintiff was subjected to a sexual and hostile work environment. Arquette stated that although he may have touched plaintiff, or given her a casual hug on occasion, he denied ever touching her in a sexual manner. In addition, defendant's plant manager denied witnessing any inappropriate conduct by Arquette and denied that plaintiff ever complained of sexual harassment before quitting. Defendants presented evidence regarding their investigation of Arquette's conduct, which failed to reveal any corroboration of plaintiff's allegations.[1]

Defendants also presented evidence that plaintiff, rather than Arquette, was the one who made crude, sexual comments and engaged in offensive behavior in the workplace. In addition, defendants presented the testimony of some of plaintiff's former employers, who testified that the reasons for plaintiff's leaving previous employment were insubordination and poor attendance, contrary to plaintiff's representations on her employment application with defendant.

Plaintiff filed a complaint alleging a hostile work environment pursuant to the Civil Rights Act (CRA), MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* On defendants' motion, plaintiff's constructive discharge claim was summarily dismissed, thus leaving only her claim for emotional distress damages. A mediation evaluation for $125,000 was accepted by plaintiff and rejected by defendants.

---

[1] Arquette did receive a written reprimand from the company, however, for touching and telling dirty jokes to two other female employees.

After a six-day jury trial, the jury found defendants liable and awarded plaintiff $80,555 in emotional distress damages. The court awarded plaintiff $43,376.66 in attorney fees and costs, and $37,827.50 in mediation sanctions, bringing the total judgment to $192,684. This appeal followed.

II

Defendants raise several challenges to the instructions given to the jury. A trial court's decisions regarding jury instructions are reviewed for an abuse of discretion. *Lagalo v Allied Corp (On Remand)*, 233 Mich App 514, 519; 592 NW2d 786 (1999). We review the instructions in their entirety and will not reverse a court's decision regarding supplemental instructions unless failure to vacate the verdict would be inconsistent with substantial justice. *Nabozny v Pioneer State Mut Ins Co*, 233 Mich App 206, 217; 591 NW2d 685 (1998).

A

Defendants first argue that the trial court erred in its instructions regarding the effect of defendants' investigation of plaintiff's complaints and subsequent remedial action. We disagree.

As defendants correctly note, an employer may avoid liability under the CRA "if it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment." *Downer v Detroit Receiving Hosp*, 191 Mich App 232, 234; 477 NW2d 146 (1991); see *Radtke v Everett*, 442 Mich 368, 396; 501 NW2d 155 (1993). However, the duty to investigate arises only if the

employer has actual or constructive notice of the alleged offensive environment. *Downer, supra* at 234-235.

In the recent cases of *Burlington Industries, Inc v Ellerth,* 524 US 742; 118 S Ct 2257; 141 L Ed 2d 633 (1998), and *Faragher v Boca Raton,* 524 US 775; 118 S Ct 2275; 141 L Ed 2d 662 (1998)—both decided after trial in the present case—the United States Supreme Court held that an employer is vicariously liable for a supervisor's creation of a hostile environment unless the employer can prove, by a preponderance of the evidence, both elements of the following affirmative defense:

> (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. [*Ellerth, supra,* 118 S Ct 2270; *Faragher, supra,* 118 S Ct 2293.]

This affirmative defense is not available where the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment. *Id.*

On appeal, defendants complain that the trial court erred in refusing to give their proposed instruction regarding this subject in its entirety.[2] We find no abuse of discretion in the trial court's decision.

---

[2] The trial court read the first paragraph, and rejected the remainder, of the following proposed instruction:

> 36. *SEXUAL HARASSMENT: EMPLOYER AVOIDANCE OF LIABILITY—ADEQUATE INVESTIGATION, PROMPT AND REMEDIAL ACTION*
> If you decide that a hostile work environment did in fact exist, you must then decide whether Defendants adequately investigated

Although the court's instructions perhaps were not as detailed as defendants may have liked, they fairly and accurately advised the jury of the applicable law. The jury was instructed that it must determine whether defendant, once it knew or should have known of the alleged harassment committed by Arquette, adequately investigated and implemented prompt and appropriate corrective action. On its verdict form, the jury specifically found that defendant did not.[3] The result of this determination by the jury, whether viewed as an element of plaintiff's claim or as a part of an affirmative defense, is vicarious liability for defendant. Consequently, substantial justice does not require reversal of the jury's verdict on the basis of the trial court's failure to read instruction 36 in its entirety.

---

and took prompt and remedial action upon notice of the alleged hostile work environment.

Adequate investigation and prompt remedial action are established where: the employee admits no further harassment occurred; the employee fails to complain of further harassment subsequent to employer's remedial efforts; or the employer's remedial efforts were both timely and reasonably likely to prevent the alleged conduct or communication(s) from recurring.

Your verdict will be for the Defendants if you find that W.A. Thomas Company adequately investigated and took prompt and remedial action.

Your verdict will be for the Plaintiff if you do not find that W.A. Thomas Company investigated and took prompt and remedial action.

[3] This conclusion is supported by the evidence presented by plaintiff that not only did she complain during the summer months to both a supervisor and the plant manager, but also that these supervisors actually witnessed some of Arquette's offensive behavior and yet took no action until after plaintiff quit.

B

Defendants also argue about the trial court's rulings regarding defendant's proposed instructions 33 and 34, which focus on evidence of plaintiff's own sexual activities in the workplace. The trial court gave the first paragraph, but not the second, of each of these instructions:

### 33. *DEFINITION OF UNWELCOME SEXUAL CONDUCT OR COMMUNICATION*

The threshold for determining that sexual conduct or communication is unwelcome is that the employee did not solicit or incite it, and the employee regarded the sexual conduct or communication as undesirable or offensive.

Evidence of an employee's participation and/or initiation in the sexual conduct or communication is relevant to determining whether the employee found the sexual conduct or communication of others unwelcome. An employee's participation and/or initiation in the sexual conduct or communication will defeat an employee's allegation of unwelcomeness unless the employee establishes a point at which her participation and/or initiation stopped and at which she made known to her coworkers or supervisors that the sexual conduct or communication would henceforth be considered unwelcome.

### 34. *DEFINITION OF INTIMIDATING, HOSTILE, OR OFFENSIVE WORK ENVIRONMENT*

Not all sexual conduct or communication constitutes hostile environment sexual harassment. To sustain a claim of hostile environment sexual harassment, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

Evidence of an employee's active contribution in the sexual conduct or communication is relevant to determining whether a hostile working environment existed. An employee's active contribution in the sexual conduct or

communication will defeat an employee's allegation of hostile work environment.

In the present case, plaintiff bore the burden of establishing the following elements of a hostile work environment:

(1) the employee belonged to a protected group;

(2) the employee was subjected to communication or conduct on the basis of sex;

(3) *the employee was subjected to unwelcome sexual conduct or communication*;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5) respondeat superior. [*Radtke, supra* at 382-383 (emphasis added).]

Defendants presented evidence in support of their claim that plaintiff often engaged in sexual conduct herself. Plaintiff's own conduct was therefore relevant to the question whether Arquette's alleged acts were "unwelcome." See, e.g., *Balletti v Sun-Sentinel Co*, 909 F Supp 1539, 1547 (SD Fla, 1995) ("Where a plaintiff's action in the work place shows that she was a willing and frequent participant in the conduct at issue, courts are less likely to find that the conduct was 'unwelcome' or 'hostile.' ") However, plaintiff's participation in sexual behavior or comments, standing alone, does not necessarily defeat a claim of hostile work environment. To the contrary, it is merely a factor to consider when determining whether the conduct or comments at issue were "unwelcome." For this reason, the second paragraph of defendants' proposed instruction 34 is an incorrect statement of the law and was properly rejected by the trial court.

Regarding the second paragraph of instruction 33, we note that the last sentence is a reasonable paraphrase of a footnote in *Loftin-Boggs v City of Meridian*, 633 F Supp 1323, 1327, n 8 (SD Miss, 1986). Accordingly, had the trial court chosen to give this portion of the instruction, it would have been a proper exercise of discretion. See *Radtke, supra* at 381-382 (Michigan courts often turn to federal precedent interpreting title VII for guidance when interpreting the CRA).

However, the trial court's refusal to give the second paragraph of instruction 33 does not require reversal. The first paragraph of this instruction, which was read to the jury, advised that in order for the conduct at issue to be "unwelcome," plaintiff herself must have found the conduct at issue to be offensive. The court also instructed the jury regarding the other elements of a hostile work environment claim, including the requirement that the alleged harassment be so severe as to substantially interfere with plaintiff's employment or create an intimidating, hostile, or offensive work environment. Read in its entirety, the court's charge represented a fair and adequate statement of the applicable law. *Murdock v Higgins*, 454 Mich 46, 50; 559 NW2d 639 (1997).

C

Defendants next challenge the trial court's refusal to instruct the jury, pursuant to the after-acquired evidence rule, that plaintiff's compensatory damages should be limited as of the date defendants discov-

ered certain false statements on her employment application.[4] We disagree.

1

In *McKennon v Nashville Banner Publishing Co*, 513 US 352; 115 S Ct 879; 130 L Ed 2d 852 (1995), an age discrimination case, the United States Supreme Court resolved a split in the circuit courts of appeal regarding whether after-acquired evidence of wrongdoing by an employee could bar recovery against an employer who had illegally discriminated against the employee. The Court unanimously held that after-acquired evidence of wrongdoing that would have resulted in termination did not bar all relief for an employee discharged in violation of the ADEA, but rather operated to limit the relief available.

The Court concluded that, as a general rule, neither reinstatement nor front pay is an appropriate remedy because it would be "both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds." *Id.* at 361. Back pay, however, may still be appropriate: "[t]he beginning point" for determining back pay "should be calculation of back pay from the date of the unlawful discharge to the date the [evidence of the employee's misconduct] was discovered." *Id.* at 362. This Court has adopted these general guidelines in the context of an action under the CRA. *Smith v Union Twp (On*

---

[4] We note that defendants did not tender a proposed jury instruction with regard to this issue. However, the court advised the parties, before the beginning of trial, that it would not instruct the jury regarding the after-acquired evidence rule and its application to plaintiff's claim for emotional distress damages.

*Rehearing)*, 227 Mich App 358; 575 NW2d 290 (1998) (failure to hire); *Horn v Dep't of Corrections*, 216 Mich App 58; 548 NW2d 660 (1996) (wrongful termination); *Wright v Restaurant Concept Management, Inc*, 210 Mich App 105; 532 NW2d 889 (1995) (sexual harassment).

2

Neither *McKennon* nor the Michigan authorities cited above address the question whether the after-acquired evidence rule applies to noneconomic damages such as those for emotional distress.[5] In the one federal case decided after *McKennon* that addresses the issue, *Russell v Microdyne Corp*, 65 F3d 1229 (CA 4, 1995), the court assumed, without explanation, that the plaintiff would be eligible for both compensatory and punitive damages despite the application of the after-acquired evidence rule. The *Russell* court further described an "after-acquired evidence" case as follows:

> In contrast to the narrow analytic distinctions between the indirect single-motive case and the mixed-motive case, the "after-acquired evidence" case stands on completely different ground. While the current label has become widespread, it is something of a misnomer, for consistency and accuracy would title it the "after-acquired motive" case. In such a case, the employer does not assert that it had in its mind a legitimate non-discriminatory reason that explains its challenged action and that would insulate it, to whatever extent, as in the mixed-motive case; instead, the employer argues that it has acquired evidence since the time of that

---

[5] Emotional distress damages are among the broad range of remedies available under the CRA. *Hyde v Univ of Michigan Bd of Regents*, 226 Mich App 511, 522; 575 NW2d 36 (1997).

action that, had it known it at the time, would have led it to
do exactly what it did, except for a legitimate reason rather
than an illegal one. Thus, unlike the two styles of cases,
there is no dispute as to the motivating force behind the
decision as made; instead, the employer attempts to demon-
strate that there was what can only be called a "construc-
tive motive" for the decision that should insulate its action
from attack. [*Id.* at 1237.]

In the present case, we find that the trial court did
not err in refusing to instruct the jury regarding the
after-acquired evidence rule. Equitable in nature, the
rule is usually applied in a situation involving termi-
nation or another adverse employment action to
ensure that an employee does not benefit from the
employee's own misconduct or misrepresentation.
The rationale of the cases applying the rule is that a
plaintiff who was not entitled to the employment in
the first place cannot claim economic damages for
the loss of it. Thus, the general rule announced in
*McKennon*—that front pay and reinstatement are
barred, and back pay stops as of the date the
employee's misconduct is discovered—represents a
reasonable balance of the CRA's dual goals of deterring
employers from discrimination and compensating
employees for injuries caused by the prohibited dis-
crimination. *McKennon, supra* at 358; *Wright, supra*
at 112-113.

In a case involving an allegation of emotional dis-
tress damages, however, the situation is much differ-
ent. As noted by the court in *Baab v AMR Services,
Corp*, 811 F Supp 1246, 1262 (ND Ohio, 1993), where
a plaintiff seeks emotional distress damages, "the
injury is to one's person and plaintiff is entitled to be
free of that injury regardless of her status as a dis-
chargeable employee." Moreover, emotional distress

damages are not as easily quantified as economic damages: they are, as the trial court noted, of a continuing nature, and it would be inequitable to treat them the same as claims for back pay, reinstatement, or front pay. Consequently, we find that a claim for emotional distress damages should be treated differently from one for purely economic damages with respect to the after-acquired evidence rule.[6]

For these reasons, we conclude that the trial court properly refused to instruct the jury that plaintiff's emotional distress damages could be terminated as of the date defendants learned that she had made false statements on her employment application.

III

Defendants next challenge certain trial court decisions regarding the admissibility of evidence. We review such matters for an abuse of discretion. *Sackett v Atyeo*, 217 Mich App 676, 682; 552 NW2d 536 (1996).

---

[6] This is particularly true here, where plaintiff's employment was not terminated, either constructively or otherwise. As stated by the court in *Russell, supra*, the after-acquired evidence rule excuses (at least to some degree) a discriminatory action, such as termination, because of the existence of employee misconduct even though the employer did not know about the misconduct at the time of termination. In the present case, plaintiff alleged that she suffered severe emotional damage stemming from the oppressive atmosphere caused by Arquette. We refuse to conclude that, merely because plaintiff lied on her employment application, defendants were free to cause her emotional harm by subjecting her to an otherwise illegal, hostile, work environment; plaintiff was not fair game for harassment even though she might have been less than candid on her employment application.

A

Defendants argue that the trial court erred in excluding the testimony of what they call a rebuttal witness. We disagree.

The trial court correctly noted that because defendants did not file a counterclaim, they were not permitted to present rebuttal evidence after resting their defense. Moreover, the proposed rebuttal testimony—regarding plaintiff's own sexual conduct in the workplace—would have been cumulative to evidence already presented by other defense witnesses. Under these circumstances, the trial court did not abuse its discretion in refusing defendants' request.

B

Defendants also argue that the trial court erred in permitting plaintiff to testify that she felt compelled to quit her job, and in excluding from evidence the court's previous order stating that, as a matter of law, plaintiff was not constructively discharged.

We first note that because defendants failed to object at trial, they have waived any challenge to plaintiff's testimony that she felt compelled to quit her job. *Napier v Jacobs*, 429 Mich 222, 227-228; 414 NW2d 862 (1987). Regarding defendants' assertion that the actual order should have been admitted into evidence, we find that the trial court was properly concerned about not distracting the jury with extraneous matters. MRE 403. The jury was carefully instructed that plaintiff's sole claim was for emotional distress damages. To admit an order that mentions another claim, only to dismiss it, would have great

potential for juror confusion. Accordingly, the trial court's ruling was not an abuse of discretion.

C

Defendants argue that the trial court erred in qualifying plaintiff's treating therapist, Domenic Tamboriello, MSW, CSW, as an expert witness and permitting him to render his opinion regarding plaintiff's symptoms of posttraumatic stress disorder (PTSD). Defendants insist that because Tamboriello is a certified social worker, and not a psychologist or psychiatrist, he was not competent to testify about PTSD. We disagree.

Pursuant to MRE 702, a person may be qualified to testify as an expert witness by virtue of his knowledge, skill, experience, training, or education in the subject matter of the testimony. Michigan has long endorsed a broad application of these requirements for qualifying an expert, *Dudek v Popp*, 373 Mich 300, 306; 129 NW2d 393 (1964), and the question whether a particular witness qualifies as an expert is left to the trial court's discretion. *Price v Long Realty, Inc*, 199 Mich App 461, 468; 502 NW2d 337 (1993).

Tamboriello testified that during his fourteen years of clinical experience, he counseled victims of sexual, physical, and emotional abuse. He further described his lengthy history of experience with clients suffering from anxiety, depression, and PTSD. The mere fact that Tamboriello is not a medical practitioner does not render him unqualified as an expert witness. See *People v Beckley*, 434 Mich 691, 712 (BRICKLEY, J.), 742 (BOYLE, J.); 456 NW2d 391 (1990) (finding no error in the trial court's qualification of a certified social worker as an expert to testify regarding sexually

abused children). Any limitations in Tamboriello's qualifications are relevant to the weight, not the admissibility, of his testimony. *Triple E Produce Corp v Mastronardi Produce Ltd*, 209 Mich App 165, 175; 530 NW2d 772 (1995).

IV

Defendants next challenge the trial court's postverdict award of attorney fees, costs, and mediation sanctions.

A

Defendants contend that the trial court abused its discretion in awarding $42,000 in attorney fees pursuant to the CRA. Specifically, defendants argue that the court failed to consider the facts that plaintiff lost her constructive discharge claim, that she received much less damages than she had asked for, and that she and her counsel had a contingent fee agreement. We disagree.

Whether to award attorney fees pursuant to the CRA is left to the trial court's discretion. *Wilson v General Motors Corp*, 183 Mich App 21, 42; 454 NW2d 405 (1990). Where attorney fees are to be awarded, the court must determine the reasonable amount of fees according to various factors, including (1) the skill, time, and labor involved, (2) the likelihood, if apparent to the client, that the acceptance of the employment will preclude other employment by the lawyer, (3) the fee customarily charged in that locality for similar services, (4) the amount in question and the results achieved, (5) the expense incurred, (6) the time limitations imposed by the client or the circum-

stances, (7) the nature and length of the professional relationship with the client, (8) the professional standing and experience of the attorney, and (9) whether the fee is fixed or contingent. *Wood v DAIIE*, 413 Mich 573, 588; 321 NW2d 653 (1982); *Head v Phillips Camper Sales & Rental, Inc,* 234 Mich App 94, 114; 593 NW2d 595 (1999).

In fashioning its attorney fee award, the trial court was mindful that plaintiff's constructive discharge claim had been dismissed and that the jury verdict was less than the mediation evaluation. However, the court opined that the pretrial cost and effort put forth by plaintiff's counsel would not have been substantially different had plaintiff not raised the constructive discharge claim at all. The court thus declined to apportion the fee according to the number of claims actually won.

The trial court also noted, correctly, that the existence of a contingent fee agreement does not automatically preclude an award of attorney fees under the CRA. Rather, such an arrangement is only one of the factors to be considered when determining a reasonable attorney fee. *King v General Motors Corp,* 136 Mich App 301, 308; 356 NW2d 626 (1984). The court rejected defendants' suggestion that plaintiff's contingent fee agreement satisfies the purposes of the CRA's attorney fee provision. If this were true, the court stated, there would rarely be an award of attorney fees, noting that most civil rights actions are brought pursuant to contingent fee agreements.

Contrary to defendants' argument, the trial court clearly and carefully considered the question of the results achieved, and the existence of a contingent fee arrangement, in determining a reasonable attorney

fee. We find no abuse of discretion in the court's award.

B

Defendants next argue that the trial court erred in awarding attorney fees as mediation sanctions pursuant to MCR 2.403 in addition to the fee awarded pursuant to the CRA. In light of our Supreme Court's recent decision in *McAuley v General Motors Corp*, 457 Mich 513; 578 NW2d 282 (1998), we find that the trial court's award of attorney fees pursuant to MCR 2.403 must be vacated.

As a general rule, a party who rejects a mediation evaluation is subject to sanctions if the party fails to improve its position at trial. *Meagher v McNeely & Lincoln, Inc*, 212 Mich App 154, 157; 536 NW2d 851 (1995). MCR 2.403(O)(1) provides in relevant part:

> If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the mediation evaluation.

If sanctions are appropriate, the costs to be charged are those taxable in any civil action plus a reasonable attorney fee. MCR 2.403(O)(6).

When the trial court granted plaintiff's motion for mediation sanctions, controlling authority permitted the award of attorney fees under both the CRA and MCR 2.403. *Howard v Canteen Corp*, 192 Mich App 427; 481 NW2d 718 (1991).[7] Recently, however, our Supreme Court held in *McAuley, supra*, that a prevail-

---

[7] In *Howard*, this Court held that because each provision served an independent policy and purpose, double recovery was appropriate:

ing party may not recover a second award of attorney fees under MCR 2.403 where the party has already been compensated for reasonable attorney fees under a fee-shifting statute.

In reversing the double award of attorney fees in the case before it, which involved the Handicapper's Civil Rights Act (HCRA),[8] the Court stated that both the mediation court rule and the HCRA were compensatory, rather than punitive, in nature. Both provisions were intended to compensate the prevailing parties for the reasonable costs of all or part of the litigation, and not to impose a penalty or to permit a party to recover an amount in excess of a reasonable attorney fee. *Id.* at 519. Consequently, where the prevailing party has already been fully reimbursed for reasonable attorney fees through the operation of a statutory provision such as the HCRA, there are no "actual costs" remaining to be reimbursed to the party under the court rule. *Id.* at 523. So-called "double recovery" under both the statute and the court rule is thus neither warranted nor required. *Id.* at 525.[9] Applying this analysis to the present case, we find that the pur-

---

The policy behind the mediation sanction rule is to place the burden of litigation costs upon the party who insists upon trial by rejecting a proposed mediation award. The purpose of the civil rights attorney fee provision is to encourage persons deprived of their civil rights to seek legal redress, to ensure victims of employment discrimination access to the courts, and to obtain compliance with the act and thereby deter discrimination in the work force. [*Howard, supra* at 441.]

The Supreme Court expressed its agreement with this general proposition in *McAuley, supra* at 522.

[8] MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*

[9] The Supreme Court declined to overrule the result in *Howard, supra,* stating only that it "neither indorsed nor condoned" the result reached in that case. *McAuley, supra* at 522.

pose of the attorney fee award provision in the CRA, like that of the HCRA, is compensatory rather than punitive. Likewise, the mediation court rule is compensatory in nature. As our Supreme Court has stated, a plaintiff cannot be "compensated" twice. *Id.* We find nothing in the record to suggest that the trial court awarded plaintiff anything less than a "reasonable" attorney fee under the CRA.[10] Accordingly, the attorney fee award provisions of the CRA and the mediation rule cannot be applied together to impose a penalty on defendants, and the trial court's award of attorney fees pursuant to MCR 2.403 must be vacated.[11]

In light of our holding, we find moot defendant's alternative argument that, pursuant to MCR 2.403(O)(3), the "adjusted verdict" was more favorable to defendants than the mediation evaluation.[12] We note briefly, however, that the trial court properly interpreted this subrule, and added to the verdict all assessable costs, including attorney fees,

---

[10] Indeed, it appears that all parties, as well as the trial court itself, relied on then-controlling case law (*Howard, supra*) and proceeded under the assumption that double recovery under the CRA and the mediation rule was appropriate

[11] Plaintiff argues that because the trial court reduced her requested attorney fees from nearly $70,000 to $42,000, she was not fully compensated, and, thus the court's award of mediation sanctions was not punitive. A similar argument was rejected by the Supreme Court in *McAuley, supra* at 523-524. We thus find no merit in plaintiff's attempt to avoid the result dictated by *McAuley,* that is, the vacation of the trial court's award of mediation sanctions.

[12] MCR 2.403(O)(3) provides in part:

For the purpose of subrule (O)(1), a verdict must be adjusted by adding to it assessable costs and interest on the amount of the verdict from the filing of the complaint to the date of the mediation evaluation, and, if applicable, by making the adjustment of future damages as provided by MCL 600.6306; MSA 27A.6306.

rather than only those costs for the period between the filing of the complaint and the date of the mediation evaluation. See *Dale.v Beta-C, Inc*, 227 Mich App 57, 69; 574 NW2d 697 (1997) ("[I]t is a general rule of statutory, as well as grammatical, construction that a modifying clause is confined to the last antecedent unless a contrary intention appears.").

C

Defendants also challenge the trial court's imposition of prejudgment interest on the award of attorney fees and costs. We find their argument to be without merit.

Interest on civil money judgments is provided for in MCL 600.6013; MSA 27A.6013. As amended in 1993, this statute provides in relevant part:

(1) Interest shall be allowed on a money judgment recovered in a civil action . . . .

\*    \*    \*

(6) . . . for complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action shall be calculated at 6-month intervals from the date of filing the complaint at a rate of interest that is equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, pursuant to this section. *Interest under this subsection shall be calculated on the entire amount of the money judgment, including attorney fees and other costs. However, the amount of interest attributable to that part of the money judgment from which attorney fees are paid shall be retained by the plaintiff, and not paid to the plaintiff's attorney.* [Emphasis added.]

Contrary to defendants' argument on appeal, the last sentence of subsection 6013(6) does not render ambiguous the sentence immediately before it. There is nothing ambiguous about the statute's mandate that interest be awarded on plaintiff's money judgment, including costs and attorney fees. That plaintiff, rather than her counsel, is entitled to the interest on the portion of the judgment representing the attorney fee does not change this fact. Accordingly, the trial court properly awarded prejudgment interest on the entire judgment, including plaintiff's costs and attorney fees.

v

In her prayer for relief, plaintiff requests that this Court award reasonable appellate attorney fees. The purpose of the CRA's attorney fee provision is to encourage persons deprived of their civil rights to seek legal redress, to ensure victims of discrimination access to the courts, and to deter discrimination. *Howard, supra* at 441; *Collister v Sunshine Food Stores, Inc,* 166 Mich App 272, 274; 419 NW2d 781 (1988). Moreover, this Court has held that an award of appellate attorney fees is proper under the CRA. *Schellenberg v Rochester Elks,* 228 Mich App 20, 56; 577 NW2d 163 (1998); *McLemore v Detroit Receiving Hosp & Univ Medical Center,* 196 Mich App 391, 402-403; 493 NW2d 441 (1992). Accordingly, we remand this case and instruct the trial court to determine and award plaintiff reasonable appellate attorney fees. In determining its award, the court is instructed to consider all appropriate factors, including the fact that plaintiff did not prevail in full on appeal. *See Head, supra* at 114.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.