GUERRERO v SMITH

Docket Nos. 277983 and 279595. Submitted September 9, 2008, at Lansing. Decided September 16, 2008, at 9:05 a.m.

Thomas L. Guerrero brought an action in the Ingham Circuit Court against Derek A. and Glen I. Smith, alleging and seeking damages for serious impairment of bodily function, i.e., neck injuries and a neurological injury impairing his cognitive abilities and mental acuity, sustained in an automobile accident. The court, Beverley Nettles-Nickerson, J., entered a judgment of no cause of action consistent with a jury's verdict, denied the plaintiff's motion for judgment notwithstanding the verdict or for a new trial, awarded costs to the defendants, and denied the plaintiff's request for sanctions on the defendants pursuant to MCR 2.114 with respect to some of the costs for which they sought reimbursement. The plaintiff filed two appeals, which were consolidated.

The Court of Appeals *held*:

1. Defense counsel at trial did not act improperly by asking the plaintiff about his past use of marijuana. Questions concerning the nature and extent of the plaintiff's marijuana use tended to aid the jury in determining whether his cognitive and mental deficiencies were attributable to the automobile accident or to some other cause. The plaintiff's testimony on this subject was not elicited for the purpose of proving his character, MRE 404(b)(1), nor was it irrelevant, MRE 401, or unfairly prejudicial, MRE 403.

2. The trial court erred by allowing defense counsel to cross-examine witness Steve Porterfield about the plaintiff's past marijuana use. Before specific instances concerning another witness's character for truthfulness or untruthfulness may be inquired into on cross-examination, the witness subject to cross-examination must already have testified on direct examination regarding the other witness's character for truthfulness or untruthfulness. MRE 608(b)(2). Because Porterfield was not called as a character witness and did not testify concerning the plaintiff's character for truthfulness or untruthfulness on direct examination, defense counsel should not have been permitted during Porterfield's cross-examination to elicit testimony concerning specific instances of the plaintiff's marijuana use for the purpose of impeaching the

plaintiff's credibility. The trial court's error was harmless in light of the jury's conclusion, indicated on the special verdict form, that the plaintiff had not suffered a serious impairment of bodily function.

3. Defense counsel likely exceeded the bounds of proper argument when, in referring to a letter from the plaintiff's counsel to a physician concerning a magnetic resonance imaging (MRI) test for the plaintiff, defense counsel stated that the plaintiff's attorney had assisted the plaintiff in "faking it [and] these sorts of things." However, any prejudice that may have resulted was cured by the trial court's instruction to the jury that it should confine deliberations to the actual evidence presented at trial and that the arguments and remarks of the attorneys were not evidence.

4. Defense counsel improperly argued before the jury that the plaintiff did not have health insurance covering his injuries and that the plaintiff had already received wage-loss benefits from his insurer. However, the lack of an objection at trial or a request for a curative instruction to the jury precludes appellate review of this issue.

5. The trial court properly admitted into evidence the letter from the plaintiff's counsel to a physician concerning the MRI test. The letter was not inadmissible hearsay because it was not offered to prove the truth of the matter asserted and, even if it was offered to prove the truth of the matter asserted, it still would not be hearsay because it would be a vicarious admission to a third party, written during the course of an attorney-client relationship. MRE 801(d)(2)(D).

6. The trial court properly refused to give three supplemental jury instructions requested by the plaintiff. The trial court's instructions to the jury properly and adequately instructed the jury on the parties' theories and the relevant law and were substantially similar to the applicable model jury instructions, M Civ JI 36.01, 36.01A, 36.02, and 36.11.

7. The trial court properly denied the plaintiff's motion for judgment notwithstanding the verdict. In order to establish a serious impairment of bodily function, the plaintiff had to, but did not, prove that objectively manifested injuries affected his general ability to lead his normal life.

8. The trial court properly denied the plaintiff's motion for a new trial. The overwhelming weight of the evidence, when viewed in total, did not favor the plaintiff.

9. Taxed costs of $1,205.25 for a private investigator, $1,351.50 for exhibit enlargement, $562.32 for the defendants' and their attorney's travel costs, $300 for copying costs, $75 for case

evaluation, and $35 for the copying of a surveillance video are not supported by statutory authority and must be deducted from the awarded costs. In contrast, taxed costs of $41.06 for the copying of a physician's video deposition and $70 for the copying of other doctors' video depositions, which video depositions were filed in the clerk's office and used as evidence at trial, are authorized by MCR 2.315(I) and MCL 600.2549.

10. The trial court did not abuse its discretion by awarding $4,142.50 as the expert-witness fee of a physician presented by the defendants. MCL 600.2164 authorizes a trial court to award expert-witness fees as an element of taxable costs, including fees for the expert's preparation time, and the award in this case did not fall outside the range of principled and reasonable outcomes.

11. The trial court did not clearly err by declining to sanction defendants under MCR 2.114 with respect to their motion for taxable costs. The defendants likely honestly believed that many of the disputed costs were taxable, and their arguments in support of those costs were not frivolous.

Affirmed in part, reversed in part, and remanded.

1. APPEAL — IMPROPER CONDUCT OF ATTORNEY.

An appellate court reviewing an appeal asserting improper conduct of an attorney during a trial should determine if the claimed error was in fact error and, if so, whether it was harmless; if the claimed error was not harmless, there is a right to appellate review if the error was properly preserved either by objection and request for instruction or by motion for a mistrial; if the error was not harmless but was preserved, the court must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial; a new trial may be granted if the court cannot say that the result was not affected.

2. EVIDENCE — APPEAL.

Evidentiary error in civil cases is considered harmless unless declining to grant a new trial, set aside a verdict, or vacate, modify, or otherwise disturb a judgment or order appears to the reviewing court inconsistent with substantial justice.

3. NEGLIGENCE — TRIAL — ATTORNEYS — REFERENCES TO INSURANCE COVERAGE AND BENEFITS.

Attorneys in an action for personal injury may not inject or argue the existence or nonexistence of insurance coverage or other remedies available to the plaintiff.

4. COURTS— JURY INSTRUCTIONS — SUPPLEMENTAL JURY INSTRUCTIONS — APPEAL.

A trial court's decision on a request for supplemental jury instructions is reviewed on appeal for abuse of discretion; a decision will not be reversed unless failure to vacate the verdict would be inconsistent with substantial justice.

5. MOTIONS AND ORDERS — JUDGMENT NOTWITHSTANDING THE VERDICT — APPEAL.

A trial court's ruling on a motion for judgment notwithstanding the verdict is reviewed de novo on appeal; the evidence is viewed in the light most favorable to the nonmoving party; if reasonable jurors could honestly have reached different conclusions, the jury verdict must stand.

6. MOTIONS AND ORDERS — NEW TRIAL — APPEAL.

A trial court presented with a motion for a new trial must determine whether the overwhelming weight of the evidence favors the losing party; on appeal, the trial court's determination is reviewed for abuse of discretion, but substantial deference is given to the trial court's conclusion that the verdict was not against the great weight of the evidence.

7. COSTS — TAXATION OF COSTS — APPEAL.

A trial court's ruling on a prevailing party's motion to tax costs is reviewed on appeal for abuse of discretion; however, whether a particular expense is taxable as a cost is a question of law (MCR 2.625).

8. COSTS — EXPERT-WITNESS FEES.

A trial court may award expert-witness fees, including fees for the expert's preparation time, as an element of taxable costs (MCL 600.2164).

9. PLEADING — SIGNATURE ON PLEADINGS — SANCTIONS.

The filing of a signed document that is not well grounded in law subjects the filer to sanctions pursuant to MCR 2.114(E).

*John L. Noud* for the plaintiff.

*Secrest Wardle* (by *Janet Callahan Barnes*) for the defendants.

Before: CAVANAGH, P.J., and JANSEN and KELLY, JJ.

PER CURIAM. In Docket No. 277983, plaintiff appeals by right the trial court's judgment for defendants on a jury verdict of no cause of action. In Docket No. 279595, plaintiff appeals by right the trial court's postjudgment order taxing costs and denying plaintiff's request to sanction defendants under MCR 2.114. This Court has consolidated the appeals. We affirm in part, reverse in part, and remand for modification of the order taxing costs consistent with this opinion.

### I. ALLEGED MISCONDUCT OF DEFENSE COUNSEL

In Docket No. 277983, plaintiff first argues that he was prejudiced by several instances of misconduct by defense counsel and that he is therefore entitled to a new trial. We disagree.

### A

The proper standard of review for claims of attorney misconduct in civil cases was discussed by our Supreme Court in *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 102-103; 330 NW2d 638 (1982):

> When reviewing an appeal asserting improper conduct of an attorney, the appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial. If the court cannot say that the result was not affected, then a new trial may be granted. Tainted verdicts need not be allowed to stand

simply because a lawyer or judge or both failed to protect the interests of the prejudiced party by timely action.

See also *Hilgendorf v St John Hosp & Med Ctr Corp*, 245 Mich App 670, 682-683; 630 NW2d 356 (2001), and *Badalamenti v William Beaumont Hosp*, 237 Mich App 278, 290; 602 NW2d 854 (1999).

B

Plaintiff argues that defense counsel prejudicially and improperly questioned him and another witness regarding his past marijuana use. Relying in part on *Wayne Co Bd of Rd Comm'rs v GLS LeasCo, Inc*, 394 Mich 126, 136-138; 229 NW2d 797 (1975), plaintiff asserts that "such questioning was irrelevant and prejudicial" and that it evidenced "a deliberate and calculated attempt to prejudice the jury."

Plaintiff has maintained throughout this case that he sustained a traumatic brain injury as a result of an automobile accident on July 22, 2002, and that this neurological injury has impaired his cognitive abilities and mental acuity. Plaintiff testified at trial that the symptoms of his alleged closed head injury included cognitive deficiencies, confusion, forgetfulness, difficulty in organizing his thoughts and affairs, and a general inability to focus. As evidenced by the deposition testimony of plaintiff's witness, Dr. Hankenson, at least one of plaintiff's physicians apparently believed that the nature and extent of plaintiff's marijuana use was a relevant consideration in diagnosing plaintiff's condition.

It is true that defense counsel was not permitted to prove plaintiff's "general lack of morality" with evidence of past instances of specific conduct such as marijuana use. *People v Crabtree*, 87 Mich App 722, 726;

276 NW2d 478 (1979). Nor is an attorney generally permitted to prove a person's bad character with specific instances of past conduct. See MRE 404(b)(1). However, it does not appear that defense counsel's questions concerning plaintiff's past marijuana use were designed to attack plaintiff's general character or morality. Instead, defense counsel's questions were designed to determine whether plaintiff's past marijuana use had in any way affected his cognitive abilities and mental acuity independent of the July 2002 automobile accident. Many of the mental and cognitive symptoms attributed by plaintiff to the automobile accident could equally have been attributable, at least in part, to other causal factors such as drug use. Defense counsel's questioning of plaintiff concerning the nature and extent of his marijuana use tended to aid the jury in determining whether plaintiff's cognitive and mental deficiencies were attributable to the automobile accident or to some other cause. The testimony elicited from plaintiff on this subject did not run afoul of MRE 404(b)(1) because it was not elicited for the purpose of proving plaintiff's bad character. Nor was the testimony irrelevant or unfairly prejudicial. MRE 401; MRE 403.[1] Defense counsel did not act improperly by asking plaintiff about his past marijuana use.

Plaintiff also argues that it was improper for defense counsel to question witness Steve Porterfield on cross-examination concerning plaintiff's past marijuana use.

---

[1] Because plaintiff's testimony concerning his past marijuana use was relevant only as it related to his cognitive abilities, mental state, and medical condition, a request for a limiting instruction would have been appropriate. MRE 105; see also *Wood v State*, 20 Ark App 61, 66; 724 SW2d 183 (1987). However, no such limiting instruction was requested. The trial court is under no obligation to provide a limiting instruction when none is requested. MRE 105; *People v Rice (On Remand)*, 235 Mich App 429, 444; 597 NW2d 843 (1999).

It is clear from the record that defense counsel sought to question Porterfield concerning plaintiff's past marijuana use for the purpose of impeaching plaintiff's credibility on this issue. Plaintiff initially testified that he had smoked marijuana only once at a University of Michigan football tailgate party. Plaintiff then admitted that although he had also smoked marijuana occasionally as a teenager, he no longer used the drug. It is clear that defense counsel's questioning of Porterfield—who worked for plaintiff during the summers of 1999, 2000, 2001, 2002, and 2003—was designed to test plaintiff's credibility with respect to the issue of marijuana use. Indeed, Porterfield testified in response to defense counsel's questions that he had smoked marijuana with plaintiff a "couple times" between 1999 and 2003, thereby undercutting the credibility of plaintiff's earlier testimony.

The problem with defense counsel's questioning of Porterfield, however, is that it did not satisfy the technical requirements of MRE 608(b)(2). Pursuant to MRE 608(b)(2), "[s]pecific instances of the conduct of a witness" may, "if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." In light of plaintiff's own testimony that he had used marijuana only once since his teenage years, evidence that Porterfield had smoked marijuana with plaintiff a "couple times" since 1999 would have been probative of plaintiff's truthfulness or untruthfulness. Therefore, defense counsel's questioning of Porterfield satisfied one of the prongs of MRE 608(b)(2). However, Porterfield had not been called as a character witness and did not testify concerning plaintiff's character for truthfulness or untruthfulness on direct examination. Before

specific instances concerning another witness's character for truthfulness or untruthfulness may be inquired into on cross-examination, the witness subject to cross-examination must already have testified on direct examination regarding the other witness's character for truthfulness or untruthfulness. MRE 608(b)(2); see also *People v Fuzi No 1*, 116 Mich App 246, 252; 323 NW2d 354 (1982). Because Porterfield was not called as a character witness and did not testify concerning plaintiff's character for truthfulness or untruthfulness on direct examination, defense counsel was not permitted to elicit from him on cross-examination testimony concerning specific instances of marijuana use for the purpose of impeaching plaintiff. MRE 608(b)(2). The trial court erred by admitting Porterfield's testimony in this regard.

Nonetheless, defense counsel's improper questioning of Porterfield concerning specific instances of marijuana use with plaintiff was harmless. In civil cases, evidentiary error is considered harmless unless "declining to grant a new trial, set aside a verdict, or vacate, modify, or otherwise disturb a judgment or order 'appears to the court inconsistent with substantial justice.' " *Chastain v Gen Motors Corp*, 467 Mich 888 (2002) (citation omitted); see also *Lewis v LeGrow*, 258 Mich App 175, 200; 670 NW2d 675 (2003). As indicated on the special verdict form, although the jurors ultimately concluded that plaintiff had not suffered a serious impairment of body function, they did conclude that plaintiff was, in fact, injured as a result of the July 2002 automobile accident. Moreover, the jurors had heard both plaintiff's own testimony and the deposition testimony of Dr. Hankenson on the issue of plaintiff's marijuana use. In light of the jury's special verdict in this case, and taking into account the other admissible evidence concerning plaintiff's past marijuana use, we

simply cannot conclude that the improperly elicited testimony of Porterfield was so prejudicial that declining to set aside the verdict or grant a new trial would be inconsistent with substantial justice. *Chastain*, *supra* at 888. Porterfield's improperly elicited testimony concerning specific instances of marijuana use with plaintiff was therefore harmless, *id*., and we will not reverse on the basis of harmless error, *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 529; 730 NW2d 481 (2007).

C

Plaintiff next argues that defense counsel prejudicially emphasized and mischaracterized a letter written by his attorney to Dr. Joel Saper on September 8, 2005. The letter stated, in pertinent part:

Dear Dr. Saper:

\* \* \*

Enclosed is a copy of an abstract of an article ... entitled "MRI [magnetic resonance imaging] assessment of the alar ligaments in the late stage of whiplash injury—a study of structural abnormalities and observer agreement." According to the (abstract) study, whiplash trauma can cause permanent damage to the alar ligaments which can be objectively evidenced by a high resolution proton density-weighted MRI.

\* \* \*

In order to prevail in litigation against the driver of the motor vehicle which rear-ended him (and injured him), Tom must have objective evidence of injury to his craniovertebral junction.

In the hope that it will provide such objective evidence of injury, Tom needs an MRI study, which accords with the

protocol described in the enclosed abstract. Specifically,
Tom needs a "proton density-weighted MRI of the cranio-
vertebral junction in three orthogonal planes." Can you
arrange for such an MRI?

Thanks for your consideration of this request.

Sincerely yours,

John L. Noud

The trial court admitted this letter into evidence.
Defense counsel argued, both during his opening state-
ment and during his closing argument, that the letter
"speaks volumes" and that it evidenced a plan by
plaintiff and his attorney to find favorable evidence of
"an objective sign of injury to get to a jury." Defense
counsel also argued that the letter showed that plain-
tiff's attorney had assisted plaintiff in "faking it [and]
these sorts of things." Because plaintiff did not object to
these statements by defense counsel, our review is for
plain error. *Veltman v Detroit Edison Co*, 261 Mich App
685, 690; 683 NW2d 707 (2004).

It is true that counsel must avoid arguing that a
party or attorney has "bought" testimony or witnesses
"when there is no basis in the evidence for any such
charge." *GLS LeasCo, Inc, supra* at 137 (citation and
quotation marks omitted). However, unlike the situa-
tion presented in *GLS LeasCo, Inc*, defense counsel
never argued that plaintiff and his counsel had
"bought" favorable evidence in the case at bar. More-
over, as noted previously, the letter to Dr. Saper had
already been admitted into evidence. Accordingly, there
*was* a "basis in the evidence" to support the charge that
plaintiff and his attorney had set out to find and obtain
favorable evidence in this case.

We acknowledge that defense counsel likely exceeded
the bounds of proper argument when he stated in
reference to the letter that plaintiff's attorney had

assisted plaintiff in "faking it [and] these sorts of things." However, plaintiff never objected to this comment or requested a curative instruction. Furthermore, the trial court twice instructed the jurors that they should confine their deliberations to the actual evidence presented at trial and that the arguments and remarks of the attorneys were not evidence. These instructions were sufficient to cure the prejudice arising from defense counsel's improper remarks. *Tobin v Providence Hosp*, 244 Mich App 626, 641; 624 NW2d 548 (2001). We accordingly find no outcome-determinative plain error. See *Veltman, supra* at 690.

D

Plaintiff argues that defense counsel improperly raised the issues of plaintiff's wage-loss benefits and plaintiff's lack of health insurance at trial. Because plaintiff did not object to the challenged remarks of defense counsel in this regard, our review is for plain error. *Id.*

It is true that attorneys must avoid injecting the issue of insurance coverage and benefits into trial. *Felice v Weinman*, 372 Mich 278, 280; 126 NW2d 107 (1964); *Kokinakes v British Leyland, Ltd*, 124 Mich App 650, 652; 335 NW2d 114 (1983). "[O]ur prior cases have made it clear that it is not relevant whether or not a plaintiff seeking recovery for personal injury has other remedies available and, therefore, the topic should not be raised before the jury." *Reetz, supra* at 104. Accordingly, it was error for defense counsel to argue before the jury that plaintiff did not have health insurance to cover his injuries and that plaintiff had already received wage-loss benefits from his insurance carrier. *Id.* However, as previously explained, the trial court instructed the jury that it should confine its deliberations to the

actual evidence presented at trial and that the statements and remarks of counsel were not evidence. Such instructions were sufficient to cure any prejudice arising from the remarks of counsel. *Tobin, supra* at 641.

Moreover, any prejudice resulting from defense counsel's improper references to plaintiff's lack of health insurance and collection of wage-loss benefits "could have been cured by an instruction from the bench . . . ." *Reetz, supra* at 105. An improper reference to insurance coverage or benefits during trial is simply not the type of error that cannot be alleviated by a timely objection and curative instruction. *Id.*; see also *Fritz v McDonough Power Equip Co*, 432 Mich 904 (1989). Because there was no objection or request for a curative instruction when defense counsel referred to plaintiff's lack of health insurance and collection of wage-loss benefits, further appellate review of this issue is precluded. *Reetz, supra* at 105; *Watkins v Manchester*, 220 Mich App 337, 340; 559 NW2d 81 (1996).

Finally, even if this issue had been properly preserved, we note that the jurors never reached the issue of damages in this case. Indeed, the jury specifically found that plaintiff had not suffered a serious impairment of body function and that he was consequently entitled to no tort recovery. We believe that this finding by the jury was sufficient to overcome any presumption of prejudice raised by defense counsel's improper references to plaintiff's insurance coverage and benefits. See *Kokinakes, supra* at 654.

### II. ALLEGED EVIDENTIARY AND INSTRUCTIONAL ERROR

Plaintiff argues that the trial court erred by admitting into evidence the aforementioned letter written by his attorney to Dr. Joel Saper on September 8, 2005, and

by declining to give three requested supplemental jury instructions. Again, we disagree.

A

While preliminary questions of law are reviewed de novo, a trial court's decision to admit or exclude evidence is generally reviewed for an abuse of discretion. *Waknin v Chamberlain*, 467 Mich 329, 332; 653 NW2d 176 (2002). An abuse of discretion occurs when the court's decision falls outside the range of principled and reasonable outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). Jury instructions are reviewed in their entirety to determine whether they accurately and fairly presented the applicable law and the parties' theories. *Meyer v Center Line*, 242 Mich App 560, 566; 619 NW2d 182 (2000). We review for an abuse of discretion the trial court's decision regarding supplemental jury instructions. *Grow v W A Thomas Co*, 236 Mich App 696, 702; 601 NW2d 426 (1999). We "will not reverse a court's decision regarding supplemental instructions unless failure to vacate the verdict would be inconsistent with substantial justice." *Id.*

B

Plaintiff argues that the letter written by his attorney to Dr. Saper constituted inadmissible hearsay. The letter from plaintiff's attorney to Dr. Saper did not constitute hearsay because it was not offered to prove the truth of the matter asserted. MRE 801(c); *Law Offices of Lawrence J Stockler, PC v Rose*, 174 Mich App 14, 30; 436 NW2d 70 (1989). Indeed, it was merely offered to show that plaintiff and his attorney had attempted to locate objectively manifested evidence of plaintiff's injuries. Moreover, even if the letter had been offered to prove the truth of the matter asserted, it still

would not have constituted hearsay because it was a vicarious admission to a third party, written by plaintiff's attorney during the course of and in furtherance of the attorney-client relationship. MRE 801(d)(2)(D); see also *United States v Amato*, 356 F3d 216, 220 n 3 (CA 2, 2004), and *United States v Brandon*, 50 F3d 464, 468 (CA 7, 1995). The trial court did not err by admitting the letter into evidence.

C

Plaintiff also argues that the trial court erred by refusing to give three supplemental jury instructions that he requested. As this Court explained in *Koester v City of Novi*, 213 Mich App 653, 664; 540 NW2d 765 (1995), rev'd in part on other grounds 458 Mich 1 (1998),

> [w]hen the standard instructions do not properly cover an area, a trial court is required to give requested supplemental instructions if they properly inform the jury of the applicable law. *Sherrard v Stevens*, 176 Mich App 650, 655; 440 NW2d 2 (1988). However, it is error to instruct the jury on a matter not supported by the evidence. *Mills v White Castle Systems, Inc*, 199 Mich App 588, 591; 502 NW2d 331 (1992). The determination whether supplemental instructions are applicable and accurate is within the trial court's discretion. *Bordeaux v Celotex Corp*, 203 Mich App 158, 168-169; 511 NW2d 899 (1993).

Plaintiff requested three supplemental jury instructions, all of which the trial court declined to give. The first supplemental jury instruction requested by plaintiff provided:

> The following nonexhaustive list of objective factors may be of assistance in evaluating whether plaintiff's "general ability" to conduct the course of his normal life has been affected: (a) the nature and extent of the impair-

ment, (b) the type and length of treatment required, (c) the duration of the impairment, (d) the extent of any residual impairment, and (e) the prognosis for eventual recovery. This list of factors in not meant to be exclusive nor are any of the individual factors meant to be dispositive by themselves.

The language of this requested instruction was lifted word-for-word from our Supreme Court's decision in *Kreiner v Fischer*, 471 Mich 109, 133-134; 683 NW2d 611 (2004). Therefore, we acknowledge that it would have "properly inform[ed] the jury of the applicable law." *Koester, supra* at 664.

However, we conclude that the trial court was not required to give plaintiff's first requested supplemental jury instruction because it had already properly and adequately instructed the jury on the relevant law. Specifically, the trial court instructed the jury as follows:

> One of the elements Plaintiff must prove in order to recover noneconomic loss damages in this case is that he sustained a serious impairment of body function.
>
> Serious impairment of body function means an objectively manifested impairment of an important body function that affects Plaintiff's general ability to lead his normal life. An impairment does not have to be permanent in order to be a serious impairment of body function.
>
> In order for an impairment to be objectively manifested, there must be a medically identifiable injury or condition that has a physical basis.
>
> * * *
>
> If you find Plaintiff suffered serious impairment of body function, but his injury has ceased, or may in the future cease to be a serious impairment of body function, that fact will not relieve Defendants from liability for any of the

noneconomic loss damages suffered by Plaintiff as a proximate result of [defendants'] negligence.

The operation of the mind and of the nervous system are body functions. Mental or emotional injury which [is] caused by physical injury or mental or emotional injury not caused by physical injury but which results in physical symptoms may be a serious impairment of body function.

The court's actual instructions were substantially similar to the applicable model jury instructions and substantially paralleled the language of M Civ JI 36.01, 36.01A, 36.02, and 36.11. These instructions adequately conveyed to the jury the applicable law and the meaning of the phrases "serious impairment of body function" and "objectively manifested." Notably, the instructions as read informed the jury that it should consider the duration of any injuries sustained by plaintiff, that an injury need not be permanent in order to qualify as a serious impairment of body function, and that an injury could constitute a serious impairment of body function even if plaintiff were to eventually recover. Because the instructions, as given, properly covered the area, the trial court was not required to give plaintiff's first requested supplemental jury instruction. *Koester, supra* at 664; *Sherrard, supra* at 655.

The second and third supplemental jury instructions requested by plaintiff provided that "[m]uscle spasms and loss of normal cervical lordotic curve may establish an objectively manifested injury" and "[m]emory is an important body function, and neuropsychological testing may suffice as an objective manifestation of an important body function." This Court has observed that muscle spasms and loss of the normal lordotic curve may qualify as objective manifestations of injury. See, e.g., *Chumley v Chrysler Corp*, 156 Mich App 474, 481-482; 401 NW2d 879 (1986); *Shaw v Martin*, 155 Mich App 89, 97; 399 NW2d 450 (1986); *Harris v*

*Lemicex*, 152 Mich App 149, 153-154; 393 NW2d 559 (1986); *Franz v Woods*, 145 Mich App 169, 176; 377 NW2d 373 (1985), overruled on other grounds by *Di-Franco v Pickard*, 427 Mich 32 (1986). This Court has also observed that memory is an important body function and that neuropsychological testing may suffice to show an objective manifestation of a serious impairment of that body function. *Shaw, supra* at 93-95; see also *Luce v Gerow*, 89 Mich App 546, 549-550; 280 NW2d 592 (1979). Therefore, plaintiff's second and third proposed supplemental instructions would also have "properly inform[ed] the jury of the applicable law." *Koester, supra* at 664.

However, as with plaintiff's first proposed instruction, we cannot conclude that the trial court erred by declining to give plaintiff's second and third proposed supplemental jury instructions. This was a well-tried case. Both plaintiff's attorney and defendants' attorney presented cogent and well-crafted arguments to the jury. Plaintiff's attorney thoroughly summarized the pertinent evidence and comprehensively explained plaintiff's theories of liability. Plaintiff's attorney argued that the x-rays and physical examinations had revealed muscle spasms in plaintiff's neck and a loss of the normal lordotic curve in plaintiff's neck and back. He argued that these x-rays and examinations constituted objective manifestations of neck and back injuries. Plaintiff's attorney also pointed out that plaintiff's doctors had conducted extensive neuropsychological testing on plaintiff. He argued that the results of this neuropsychological testing "constitute objective evidence of a brain injury." He lastly noted that the court would read M Civ JI 36.02, and argued to the jury that "[t]he operation of the mind and of the nervous system" were important body functions.

As noted previously, the trial court instructed the jury that "[i]n order for an impairment to be objectively manifested, there must be a medically identifiable injury or condition that has a physical basis"[2] and that "[t]he operation of the mind and of the nervous system are body functions. Mental or emotional injury which [is] caused by physical injury or mental or emotional injury not caused by physical injury but which results in physical symptoms may be a serious impairment of body function."[3] There is simply no indication that the jury misunderstood plaintiff's theories of liability in this case, that the jury did not comprehend the applicable legal principles, or that it was unaware of plaintiff's position that the x-rays, other physical examinations, and neuropsychological testing had produced objectively manifested evidence of neck, back, and neurological injuries. Because the court's instructions properly covered the relevant areas, the trial court did not err by declining to give plaintiff's second and third requested supplemental jury instructions. *Koester, supra* at 664; *Sherrard, supra* at 655.

The jury instructions read by the trial court in this case accurately and fairly presented the applicable law and the parties' theories. *Meyer, supra* at 566. We perceive no instructional error requiring reversal.

### III. MOTION FOR JNOV OR NEW TRIAL

Plaintiff next argues that the trial court erred by denying his motion for judgment notwithstanding the verdict (JNOV) or alternatively a new trial. We disagree. Reasonable jurors could honestly have reached

[2] See M Civ JI 36.11.

[3] See M Civ JI 36.02.

different conclusions in this case, and the jury's verdict of no cause of action was not against the great weight of the evidence.

A

"This Court reviews de novo a trial court's ruling on a motion for JNOV." *Attard v Citizens Ins Co of America*, 237 Mich App 311, 321; 602 NW2d 633 (1999). In doing so, we must view the evidence in a light most favorable to the nonmoving party. *Sniecinski v Blue Cross & Blue Shield of Michigan*, 469 Mich 124, 131; 666 NW2d 186 (2003). " 'If reasonable jurors could honestly have reached different conclusions, the jury verdict must stand.' " *Central Cartage Co v Fewless*, 232 Mich App 517, 524; 591 NW2d 422 (1998), quoting *Severn v Sperry Corp*, 212 Mich App 406, 412; 538 NW2d 50 (1995).

"[W]ith respect to a motion for a new trial, the trial court's function is to determine whether the overwhelming weight of the evidence favors the losing party." *Phinney v Perlmutter*, 222 Mich App 513, 525; 564 NW2d 532 (1997). "This Court's function is to determine whether the trial court abused its discretion in making such a finding." *Id*. We give substantial deference to the trial court's conclusion that a verdict was not against the great weight of the evidence. *Id*.

B

Plaintiff argues that the evidence presented at trial established that he suffered a serious impairment of body function as a matter of law. He asserts that the trial court should have granted his motion for JNOV for this reason.

Following trial, the jury returned a unanimous verdict of no cause of action. The jury determined (1) that

defendant Derek Smith was negligent, (2) that plaintiff was injured in the accident, (3) that Smith's negligence was a proximate cause of plaintiff's injuries, but (4) that plaintiff's injuries had not resulted in a serious impairment of body function. The question whether plaintiff had suffered a serious impairment of body function turned largely on the testimony and reports of physicians and psychologists, as well as the testimony of plaintiff himself.

In order to establish a serious impairment of body function, plaintiff was required to prove that he had suffered one or more objectively manifested injuries that affected his general ability to lead his normal life. MCL 500.3135(7); *Kreiner, supra* at 132.

As an initial matter, there was conflicting evidence with respect to whether plaintiff's alleged injuries were objectively manifested. Physical examinations and x-rays appeared to show that plaintiff had sustained muscle spasms and a loss of the normal lordotic curve in his neck and back as a result of the July 2002 automobile accident. In addition, both Dr. Branca and Dr. Andary opined that plaintiff had suffered a traumatic brain injury as a result of the accident, and plaintiff himself testified at length concerning not only his alleged neurological and cognitive symptoms, but also concerning his back, neck, and head pain. In contrast, Dr. Chodoroff did not believe that plaintiff had sustained brain trauma as a result of the July 2002 automobile accident, and suggested that much of plaintiff's pain was likely attributable to a degenerative disc condition that had been present in plaintiff's neck and back since before 2002.

But even assuming, for the sake of argument, that plaintiff's alleged back, neck, head, and neurological injuries were all objectively manifested, we find that

reasonable jurors could have honestly concluded that plaintiff's injuries did not affect his general ability to lead his normal life. It is true that plaintiff testified that his life had changed since the accident. For example, plaintiff complained that he was no longer able to perform many of the tasks that he had taken for granted before the accident. Buttressing plaintiff's testimony in this regard, Dr. Andary testified that plaintiff's neurological deficits, mood disorders, pain, headaches, and depression would likely "be persistent." Dr. Andary also "doubt[ed] that [plaintiff's] neck pain will ever go away," and "suspect[ed]" that plaintiff's occipital neuralgia would "be permanent." In contrast, however, other testimony painted a somewhat different picture. For instance, plaintiff admitted that he had begun building a deck and that he had used heavy equipment since the July 2002 accident. Plaintiff also admitted that he continued to exercise, ride a bike, jog, and play tennis, and even testified that he had taken up hunting since the 2002 accident. Similarly, witness Susan Barry was confident that plaintiff "could perform the duties of a tennis coach," even after the July 2002 accident. Finally, the surveillance video played for the jury showed that plaintiff had plowed and shoveled snow without any apparent difficulties during early 2007. In short, plaintiff's claim that he could no longer lead his preaccident lifestyle was belied by certain opposing testimony, which showed that plaintiff continued to engage in many of the same work and recreational activities that he had enjoyed before the accident.

Viewing the evidence in a light most favorable to defendants, *Sniecinski, supra* at 131, we find that reasonable jurors could honestly have reached different conclusions with respect to whether plaintiff's injuries affected his general ability to lead his normal life.

*Central Cartage, supra* at 524. Because reasonable jurors could have honestly differed on this issue, the trial court did not err by denying plaintiff's motion for JNOV. *Id*.

C

Nor did the trial court err by denying plaintiff's motion for a new trial, which was predicated on the ground that the jury's verdict was against the great weight of the evidence. The evidence in this case did not overwhelmingly favor either side. With respect to whether plaintiff's alleged injuries were objectively manifested, the jury's determination turned largely on the weight ascribed to the testimony of the individual physicians and psychologists. "The weight given to the testimony of experts is for the jury to decide," and it is the province of the jury to decide which expert to believe. *Phillips v Deihm*, 213 Mich App 389, 401-402; 541 NW2d 566 (1995); see also *Detroit v Larned Assoc*, 199 Mich App 36, 41; 501 NW2d 189 (1993). Further, with respect to whether plaintiff's alleged injuries had affected his general ability to lead his normal life, the jury's determination turned largely on plaintiff's own credibility. It is the jury's responsibility to determine the credibility and weight of the trial testimony. *Zeeland Farm Services, Inc v JBL Enterprises, Inc*, 219 Mich App 190, 195; 555 NW2d 733 (1996). The jury has the discretion to believe or disbelieve a witness's testimony, even when the witness's statements are not contradicted, *Baldwin v Nall*, 323 Mich 25, 29; 34 NW2d 539 (1948), and we must defer to the jury on issues of witness credibility, *Allard v State Farm Ins Co*, 271 Mich App 394, 406-407; 722 NW2d 268 (2006).

We give substantial deference to the trial court's conclusion that the jury's verdict was not contrary to the great weight of the evidence. *Phinney, supra* at 525. In view of the totality of the evidence presented at trial, we simply cannot conclude that "the overwhelming weight of the evidence" favored plaintiff in this case. *Id.* The trial court did not abuse its discretion by denying plaintiff's motion for a new trial on the ground that the verdict was against the great weight of the evidence. *Id.*

### IV. TAXATION OF COSTS

In Docket No. 279595, plaintiff argues that the trial court erred by allowing defendants to improperly tax certain of their expenses as costs. We agree in part.

### A

We review for an abuse of discretion the trial court's ruling on a motion to tax costs under MCR 2.625. *Klinke v Mitsubishi Motors Corp*, 219 Mich App 500, 518; 556 NW2d 528 (1996). However, whether a particular expense is taxable as a cost is a question of law. We review questions of law de novo. *Gen Motors Corp v Dep't of Treasury*, 466 Mich 231, 236; 644 NW2d 734 (2002).

### B

"Costs will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action." MCR 2.625(A)(1); see also *Beach v State Farm Mut Auto Ins Co*, 216 Mich App 612, 621; 550 NW2d 580 (1996). The power to tax costs is purely statutory, and the prevailing party cannot recover such expenses absent statutory authority. *Elia v*

*Hazen,* 242 Mich App 374, 379; 619 NW2d 1 (2000). The starting presumption in all civil cases is:

> "[C]osts shall be allowed as a matter of course to the prevailing party. *This does not mean, of course, that every expense incurred by the prevailing party in connection with the proceeding may be recovered against the opposing party.* The term 'costs' as used [in] MCR 2.625(A) takes its content from the statutory provisions defining what items are taxable as costs." [*Beach, supra* at 622, quoting 3 Martin, Dean & Webster, Michigan Court Rules Practice (3d ed), pp 720-721 (emphasis added).]

Defendants, as the prevailing parties at trial, filed a motion to tax costs under MCR 2.625 in the amount of $10,768.18. Specifically, defendants sought to tax the following expenses as costs: (1) The case evaluation fee of $75, (2) three motion fees, totaling $60, (3) transcript and videotaping costs related to the depositions of Dr. Hankenson, Dr. Branca, Dr. Andary, and Dr. Chodoroff, totaling $2,681.61,[4] (4) copying of the doctors' video depositions for trial, totaling $70, (5) a copy of the surveillance video for plaintiff's counsel, totaling $35, (6) expert witness fees for Dr. Chodoroff in the amount of $4,142.50, (7) "Investigator Costs" for witness Gary Setla in the amount of $1,305.25, (8) statutory attorney fees in the amount of $170, (9) costs for "Blow Up Mounts" in the amount of $1,351.50, (10) a subpoena fee for witness Lauren Bell in the amount of $15, (11) mileage to and from trial in the amount of $562.32, and (12) general "Copying Charges" in the amount of $300.

Plaintiff first argues that there was no legal authority supporting the taxation of "Investigator Costs" for

---

[4] In particular, defendants sought $239.80 for "Dr. Hankenson—Transcript Fee"; $974.25 for "Dr. Branca and Dr. Andary Transcript Fees"; $41.06 for "Dr. Hankenson—Video Copy"; $1,031.50 for "Deposition Transcript of Dr. Brian Chodoroff"; and $395 for "Videotape of Dr. Chodoroff."

witness Gary Setla in the amount of $1,305.25. Defendants respond by arguing that Setla was an "expert witness" and that the "Investigator Costs" were therefore taxable pursuant to MCL 600.2164.

It is true that "MCL 600.2164(1) authorizes a trial court to award expert witness fees as an element of taxable costs." *Rickwalt v Richfield Lakes Corp*, 246 Mich App 450, 466; 633 NW2d 418 (2001). However, Setla was never qualified as an expert witness at trial. Moreover, even if Setla had been qualified as an expert, the "Investigator Costs" still would not have been taxable under MCL 600.2164 because a review of that statute reveals that it is expressly inapplicable here. MCL 600.2164(3) states that the statute does not apply to "witnesses testifying to the established facts, or deductions of science, *nor to any other specific facts*, but only to witnesses testifying to matters of opinion." (Emphasis added.) Setla, a private investigator, took surveillance film for the express purpose of establishing the *fact* that plaintiff was still able to engage in certain of his preaccident activities such as plowing and shoveling snow. Setla was not hired to testify concerning a matter of opinion. Thus, the statute does not apply, and the "Investigator Costs" of $1,305.25 were not taxable pursuant to MCL 600.2164. *Century Dodge, Inc v Chrysler Corp*, 154 Mich App 537, 547-548; 398 NW2d 1 (1986). Nor have we located any other statute or court rule that would authorize the taxation of these "Investigator Costs." Because the "Investigator Costs" in the amount of $1,305.25 were not taxable, the trial court abused its discretion by awarding them as an element of the taxed costs. *Klinke, supra* at 518.

Plaintiff next argues that there was no legal authority permitting taxation of costs for "Blow Up Mounts" in the amount of $1,351.50. Plaintiff is correct. The

expense of exhibit enlargement is not a taxable cost. *J C Bldg Corp II v Parkhurst Homes, Inc*, 217 Mich App 421, 429; 552 NW2d 466 (1996); *Taylor v Anesthesia Associates of Muskegon*, 179 Mich App 384, 387; 445 NW2d 525 (1989). The trial court abused its discretion by awarding the expense of "Blow Up Mounts" as an element of the taxed costs. *Klinke, supra* at 518.

Plaintiff also argues that there was no authority allowing the taxation of mileage to and from trial in the amount of $562.32. Again, plaintiff is correct. Although the traveling expenses of witnesses may be taxed as costs, MCL 600.2405(1); MCL 600.2552(1); MCL 600.2552(5), there is no statute or court rule allowing for the taxation of the traveling expenses of attorneys or parties. See *McDonald v McDonald*, 45 Mich 44, 45-46; 7 NW 230 (1880) (observing that the traveling expenses of a party himself were not taxable as costs). We conclude that the trial court abused its discretion by awarding mileage expenses in the amount of $562.32 as an element of the costs taxed in this case. *Klinke, supra* at 518.

Plaintiff further argues that there was no legal authority permitting taxation of general "Copying Charges" in the amount of $300. Plaintiff is correct. No statute or court rule allows the taxation of expenses related to the general copying of documents.[5] See *Beach, supra* at 622-623. While the time spent by an attorney on activities such as the copying of documents may be awardable as attorney fees, the individual copying expenses are not awardable as taxable costs.

---

[5] MCL 600.2549 does allow for the taxation of costs "for the certified copies of documents or papers recorded or filed in any public office" if "the documents or papers were necessarily used." However, there is simply no indication that the $300 at issue here was spent for certified copies of official public documents.

Because no statute or court rule authorizes the taxation of general copying expenses, the trial court abused its discretion by awarding copying charges in the amount of $300 as an element of the costs taxed in this case. *Klinke, supra* at 518.

Plaintiff next argues that that there was no authority allowing the taxation of the case evaluation fee of $75. Plaintiff is again correct. Contrary to defendants' assertion, case evaluation fees are not specifically covered by MCL 600.2529. Indeed, this Court has specifically observed that case evaluation fees, formerly known as mediation fees, are not taxable as costs. *J C Bldg Corp II, supra* at 429. The trial court abused its discretion by awarding the case evaluation fee of $75 as an element of the taxed costs. *Klinke, supra* at 518.

Plaintiff also argues that there was no legal authority permitting the taxation of $35 for copying of the surveillance video. Plaintiff is correct. There is simply no statute or court rule that authorizes the taxation of costs for the copying of surveillance videos, and the trial court therefore abused its discretion by awarding this amount as an element of the costs taxed in this case. *Klinke, supra* at 518.

Lastly, plaintiff argues that there was no authority permitting the taxation of $41.06 for the copying of Dr. Hankenson's video deposition and $70 for the copying of the remaining doctors' video depositions. Although correct about the above-mentioned items, plaintiff is incorrect with respect to these two expenses. The costs of copying the video depositions at issue here were properly taxed because the depositions were filed in the clerk's office and used as evidence at trial. MCR 2.315(I); MCL 600.2549.

The trial court erred by allowing defendants to tax $3,629.07 in improper expenses. On remand, the trial

court shall modify the order taxing costs accordingly, by decreasing the amount of taxable costs from $10,768.18 to $7,139.11.

### V. REASONABLENESS OF EXPERT WITNESS FEES

Plaintiff next argues that the trial court abused its discretion by allowing defendants to tax Dr. Chodoroff's expert witness fees of $4,142.50, which were charged at a rate of $500 an hour. We cannot agree.

#### A

We review for an abuse of discretion the trial court's determination of the proper amount of taxable expert witness fees. *Rickwalt, supra* at 466. An abuse of discretion occurs when the court's decision falls outside the range of principled and reasonable outcomes. *Maldonado, supra* at 388.

#### B

The trial court allowed defendants to tax Dr. Chodoroff's expert witness fees in the amount of $4,142.50. Those expert witness fees were charged at a rate of $500 an hour. As noted previously, "MCL 600.2164(1) authorizes a trial court to award expert witness fees as an element of taxable costs." *Rickwalt, supra* at 466. The trial court also has discretion under MCL 600.2164 to include fees for the expert's preparation time. *Herrera v Levine*, 176 Mich App 350, 357-358; 439 NW2d 378 (1989).

Plaintiff argues that Dr. Chodoroff's hourly rate of $500 was "patently unreasonable." However, Dr. Hankenson, one of plaintiff's medical experts in this case, testified that he was paid $375 an hour for his deposition testimony. Dr. Hankenson is a family doctor and is

board-certified in family medicine only. In contrast, Dr. Chodoroff is a specialist who is board-certified in the fields of physical medicine and rehabilitation and electrodiagnostic medicine. In comparison to Dr. Hankenson's hourly rate of $375, Dr. Chodoroff's hourly rate of $500 does not strike us as "patently unreasonable."

In *Rickwalt*, the plaintiff sought to tax $5,184.80 in expert witness fees. *Rickwalt, supra* at 466. "[A]n itemized bill was presented to the trial court and . . . the parties argued regarding the propriety of specific items within the bill." *Id.* The record indicated that the expert had spent time preparing for his deposition testimony, establishing a case file, reviewing deposition testimony and notes, preparing a reconstruction of the decedent's death, and reviewing the mediation summaries. *Id.* The trial court "considered the breakdown of [the expert's] charges, ultimately finding appropriate the requested amounts of time [the expert] spent preparing for his testimony and trial, but reducing the requested hourly fees for [the expert's] trial preparation, from $130 an hour to $100 an hour, and trial time, from $200 an hour to $150 an hour." *Id.* at 466-467. Because the record "indicate[d] that the trial court considered and weighed the reasonableness of [the] requested expert witness fees," this Court concluded that the trial court's ultimate award of $4,196 had not constituted an abuse of discretion. *Id.* at 467.

Similarly in this case, the trial court observed during oral argument on the motion to tax costs that it had carefully considered the amount of expert witness fees that defendants sought to tax. After reviewing defendants' itemized bill of costs and listening to the parties' arguments, the court concluded that an award of expert witness fees for Dr. Chodoroff in the amount of $4,142.50 would not be unjustified. As in *Rickwalt*, the

record "indicates that the trial court considered and weighed the reasonableness of [the] requested expert witness fees." We cannot conclude that the trial court's ultimate award of $4,142.50 in expert witness fees for Dr. Chodoroff, at a rate of $500 an hour, fell outside the range of principled and reasonable outcomes. *Maldonado, supra* at 388.

### VI. SANCTIONS PURSUANT TO MCR 2.114

Plaintiff lastly argues that the trial court erred by declining to sanction defendants pursuant to MCR 2.114. We disagree.

### A

We review for clear error the trial court's determination whether to impose sanctions under MCR 2.114. *Contel Sys Corp v Gores*, 183 Mich App 706, 711; 455 NW2d 398 (1990). A decision is clearly erroneous when, although there may be evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Id.*

### B

Plaintiff contends that because there was no arguable legal basis for taxing certain of the costs sought by defendants in this case, the trial court should have sanctioned defendants under MCR 2.114. Pursuant to MCR 2.114(D), an attorney is under an affirmative duty to conduct a reasonable inquiry into both the factual and legal basis of a document before it is signed. *LaRose Market, Inc v Sylvan Ctr, Inc*, 209 Mich App 201, 210; 530 NW2d 505 (1995). Under MCR 2.114(D), the signature of a party or an attorney is a certification that the document is "well grounded in fact and . . . war-

ranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law" and that "the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." The filing of a signed document that is not well grounded in fact and law subjects the filer to sanctions pursuant to MCR 2.114(E). *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 407; 651 NW2d 756 (2002). MCR 2.114(E) states that the trial court "shall" impose sanctions upon finding that a document has been signed in violation of the rule. Therefore, if a violation of MCR 2.114(D) has occurred, the sanctions provided for by MCR 2.114(E) are mandatory. *Contel Sys Corp, supra* at 710-711.

The taxation of costs in civil actions is generally governed by chapter 24 of the Revised Judicature Act, MCL 600.2401 *et seq*. Many of the statutes contained in this chapter are written in a cumbersome manner, and several of the statutes refer to other statutes to define which costs may actually be taxed. After reviewing this body of statutory law, we conclude that defendants likely honestly believed that many of the above-mentioned, disputed expenses were taxable as costs. Moreover, we do not find that the arguments presented by defendants in support of the requested costs were frivolous. Because defendants put forth reasonable arguments in support of their motion to tax costs, we cannot conclude that defendants' motion was frivolous or devoid of legal merit when made. See *Schadewald v Brulé*, 225 Mich App 26, 42; 570 NW2d 788 (1997), and *Attorney General v Harkins*, 257 Mich App 564, 576-577; 669 NW2d 296 (2003). The trial court did not clearly err by declining to sanction defendants under MCR 2.114.

## VII. CONCLUSION

In Docket No. 277983, we affirm the jury's verdict of no cause of action. No error occurred requiring reversal. In Docket No. 279595, we affirm the trial court's specific award of expert witness fees and the trial court's denial of plaintiff's request to sanction defendants. However, we reverse the trial court's order taxing costs to the extent that it allows the taxation of $3,629.07 in improper expenses. On remand, the trial court shall modify the order taxing costs accordingly, by decreasing the amount of taxable costs from $10,768.18 to $7,139.11.

Affirmed in part, reversed in part, and remanded for modification of the order taxing costs consistent with this opinion. We do not retain jurisdiction. No costs under MCR 7.219, neither party having prevailed in full.