# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MILLER, Minors.

UNPUBLISHED
March 3, 2015

No. 323001
Cass Circuit Court
Family Division
LC No. 13-000088-NA

Before: BECKERING, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

Respondent father appeals as of right the trial court order terminating his parental rights to the minor children under MCL 712A.19b(3)(g) (failure to provide proper care and custody) and (j) (child will be harmed if he or she is returned to parent). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND.

This appeal arises from the termination of respondent's parental rights to his minor children. The trial court initially ordered the minor children removed from respondent's home after the death of their mother and the father indicating that he could not care for the minor children.[1] On September 9, 2013, the trial court held a plea hearing in lieu of an adjudication trial. At the hearing, respondent acknowledged that his home posed a risk to the minor children due to clutter, garbage, dirty dishes and old food. Respondent also acknowledged that he informed a Child Protective Services (CPS) worker that he was unable to care for the minor children. Based on these admissions, the trial court took jurisdiction over the minor children under MCL 712A.2(b) and ordered the minor children to continue to live with a relative.

On December 10, 2013 petitioner moved for an emergency ex parte order suspending respondent's visitation, alleging that following parenting times with respondent, the minor children were "emotionally dysregulated" and exhibited "fear, anger, and frequent meltdowns." Petitioner alleged that the minor children's behaviors demonstrated that they were being re-

---

[1] Respondent alleges that he told authorities that he could not take care of the minor children on the date of their mother's death, but disputes that he was unable to care for them following the death of their mother.

traumatized during every weekly parenting time with respondent. Petitioner also alleged that respondent did not engage with the minor children during one parenting time, and that the minor children frequently asked to leave the room and not to be left alone with respondent during parenting times.

On December 11, 2013, the trial court ordered that respondent's parenting times with the minor children be suspended based on its finding that "continued visits between the minor children and Respondent Father would be harmful to the minor children." On December, 23, 2013, respondent objected to the trial court's suspension of his parenting times with the minor children. On January 14, 2014, the trial court held a dispositional review hearing, and based on that hearing, the trial court found that respondent received reasonable efforts to reunify him with the minor children because he received services that included case management, placement, a psychological evaluation, parenting time, and counseling. The trial court also ordered that respondent's parenting time with the minor children be suspended.

On April 14, 2014, following an earlier hearing in March, petitioner petitioned the trial court for the termination of respondent's rights to the minor children under MCL 712A.19b(3)(b)(*i*), (c)(*i*), (g), and (j). Then, on April 22, 2014, petitioner filed notice that it intended to introduce statements the minor children made regarding sexual abuse and domestic violence pursuant to MRE 803(4), MRE 803(24), MRE 803A, and MCL 768.27c. The trial court admitted the minor children's statements regarding domestic violence under MRE 803(24).

On May 21, 2014, the trial court began a termination hearing. Cheryl Mayle, a child and family therapist with Saginaw County Community Mental Health, was the minor children's therapist. She began working with them on August 27, 2013. Mayle was admitted as an expert witness in the area of child counseling, trauma assessment, and trauma counseling. Mayle testified that she was the person who initially recommended that respondent's parenting times be suspended after she had observed the father during a couple of the supervised parenting times, and saw how the minor children kept trying to leave the supervision room.

Mayle testified that issues regarding domestic violence and sexual abuse arose during the therapy sessions, specifically when she asked the minor children to engage in role playing where the minor children would assume the role of their mother and their father. While the minor children role played as father and mother, the child playing as father would kick the child playing mother. The child playing mother never kicked the child playing father, however, the minor children would also slap each other, regardless of which child was playing father or mother at the time. While the minor children were playing father and mother, they would say "this is my house" and "[n]o, you, this is my house." While engaging in role playing the minor children swore at each other.

Mayle testified that the minor children could not think of a fun time regarding their parents to role play, and that the children were very tense and did not smile while playing father and mother. She testified that when she asked the minor children to role play as their grandparents, their demeanor changed and their portrayal of their grandparents was calm.

Based on her sessions with the minor children, Mayle testified that the minor children were suffering from complex, multiple traumas that could affect their lives well into the future.

She opined that if respondent would be allowed to visit the minor children again, such visits would necessitate the need to begin therapy from the beginning.

In addition to the testimony of Mayle, Kimberly James, a foster care worker assigned to the case, testified that respondent was diagnosed with moderate and chronic Post Traumatic Stress Disorder (PTSD) and major depression. James further testified that respondent had the following barriers to reunification: PTSD, depression, trauma, domestic violence, an inability to parent, sexual abuse and insufficient housing.[2]

Respondent testified that his visits had gone well with the minor children, recalling with some specificity all of the activities that he and the minor children engaged in during these visits. He did admit that when the minor children were removed, his home was not in good shape and that the children were sleeping on mattresses on the floor.

Respondent also admitted that he had been controlling and physically aggressive with the mother of the minor children, but he denied hitting, slapping, punching, or kicking his ex-wife. However, respondent admitted that he pushed or yanked her around and that he swore at his ex-wife. Respondent alleged in his testimony that any physical abuse stopped in 2005 and that he never committed domestic violence in front of the minor children. However, respondent acknowledged that he and his ex-wife would get into arguments and that they would swear at each other and call each other names while the minor children were with them in the house.

Respondent testified that, at the time of the hearing, his home had been foreclosed and further stated that he did not believe that the minor children should be returned to him until he moved out of his house. Respondent denied any sexual abuse of the minor children and testified that he believed the minor children's maternal grandmother, and current guardian, were responsible for the minor children believing they had been abused. Respondent testified during the time he was denied visitation with the minor children, someone had manipulated the minor children to such an extent that they would role play domestic violence in front of Mayle.

On July 7, 2014, the trial court issued its opinion from the bench, finding that domestic violence occurred in front of the minor children. The trial court found that respondent had not dealt with his own issues regarding domestic violence and that he did not comprehend how devastating domestic violence was for the minor children. The trial court also found that placing the minor children with respondent would create a very dangerous situation for the children because, if they had some difficulties, that could trigger situations where violence could escalate. The trial court therefore opined that pursuant to MCL 712A.19b(3)(g), there was clear and convincing evidence that respondent failed to provide proper care and custody for the minor children and that there was no reasonable expectation that respondent would be able to provide proper care and custody within a reasonable time considering the children's age. The trial court

---

[2] Relative to the issue of sexual abuse, one of the minor children alleged during a forensic interview that sexual abuse occurred in the past. According to James, the forensic interviewer had substantiated the sexual abuse, however, the trial court barred the forensic interviewer from testifying.

also found that pursuant to MCL 712A.19b(3)(j), there was clear and convincing evidence of a reasonable likelihood of harm to the minor children if they were returned to respondent because of respondent's unresolved depression and PTSD.

The trial court found by clear and convincing evidence that it was in the minor children's best interests to terminate respondent's parental rights based on the minor children's need for stability. The trial court also found that reasonable efforts were made to reunify father with the minor children in this case. On July 11, 2014, the trial court entered an order terminating father's parental rights to the minor children, and this appeal then ensued.

## II. ISSUES AND ANALYSIS.

On appeal, respondent first argues that the trial court erred in qualifying Mayle as an expert witness. "The admissibility of expert witness testimony is governed by MRE 702 . . . ." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

For expert testimony to be admissible, MRE 702 requires that "(1) the witness be an expert, (2) there are facts in evidence that require or are subject to examination and analysis by a competent expert, and (3) the knowledge is in a particular area that belongs more to an expert than to the common man." *Surman v Surman*, 277 Mich App 287, 308; 745 NW2d 802 (2007). A trial court's qualification of a witness as an expert is reviewed for an abuse of discretion. *Id*. at 304-305.

On appeal, respondent challenges Mayle's qualifications as an expert under MRE 702. "A witness may be qualified as an expert by knowledge, skill, experience, training, or education." *Id*. at 308. The requirement that a witness be qualified as an expert by knowledge, skill, experience, training, or education is to be broadly applied. *Grow v WA Thomas Co*, 236 Mich App 696, 713; 601 NW2d 426 (1999).

The evidence presented at trial revealed that Mayle worked with Saginaw County Community Mental Health for 20 years, and had been in the family service unit for 18 years. Mayle worked as a case manager and a home-based assistant, and was, at the time of the hearing, a "master's level therapist." Mayle estimated that she had been in contact with over 300 children. Mayle had a Master's degree in social work and was a fully licensed Master Social Worker. Mayle was also involved with the Mobile Urgent Treatment Team, which responded to crisis calls involving children to try to de-escalate the situation to avoid children being required to go to inpatient psychiatric services or to detention. Additionally, while Mayle initially testified that she had not received training in the area of domestic violence and sexual abuse of children "per say," she subsequently explained that she had received instruction regarding those

issues during training sessions. Mayle also had been previously qualified before the trial court as an expert in child counseling, trauma assessment, and trauma counseling and had also been qualified as an expert in another family court. Accordingly, the record strongly supports that Mayle had knowledge, skills, experience, training, and education in the areas of "child counseling, trauma assessment, and trauma counseling" as was necessary for her qualification as an expert under MRE 702 in those areas. *Surman*, 277 Mich App at 308.

Mayle testified that the minor children had been traumatized by witnessing domestic violence. However, defendant argues that Mayle was not qualified as an expert in domestic violence. This argument is without merit. The relevant testimony was within her particular expert knowledge regarding the fact that the children had been *traumatized*, not that the children had witnessed violence. *Surman*, 277 Mich App at 308 (expert testimony requires knowledge in a particular area belonging more to an expert than to the common man). Accordingly, the trial court did not abuse its discretion when it qualified the therapist as an expert. *Id*. at 304-305.

Respondent also argues that the trial court improperly admitted Mayle's testimony regarding the minor children's statements during therapy concerning his domestic violence under MRE 803(24).[3] MRE 803 provides, in relevant part, that:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> (24) Other Exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact, (B) the statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of the statement makes known to the adverse party, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

---

[3] Generally, the Michigan Rules of Evidence do not apply to termination hearings under MCL 3.977(H)(2). However, what the minor children said and did regarding domestic violence during therapy was not the subject of respondent's admissions at the adjudication trial, and legally admissible evidence was required to demonstrate what the minor children said and did regarding domestic violence during therapy in this case. *In re DMK*, 289 Mich App 246, 258; 796 NW2d 129 (2010); MCR 3.977(F).

For a hearsay statement to be admissible under the exception found in MRE 803(24), "a hearsay statement must: (1) demonstrate circumstantial guarantees of trustworthiness equivalent to the categorical exceptions, (2) be relevant to a material fact, (3) be the most probative evidence of that fact reasonably available, and (4) serve the interests of justice by its admission." *Int'l Union, United Auto, Aerospace & Agricultural Implement Workers of America v Dorsey (On Remand)*, 273 Mich App 26, 41-42; 730 NW2d 17 (2006) (citation and quotations omitted). "We review for an abuse of discretion a trial court's decision regarding the admission of evidence." *In re Utrera*, 281 Mich App 1, 15; 761 NW2d 253 (2008).

On appeal, respondent does not challenge the trial court's finding that statements about domestic violence related to a material fact, that the minor children's hearsay statements were the most probative evidence of domestic violence available that petitioner could procure through reasonable efforts, that admitting the evidence would serve the interest of justice, or that he properly received notice. Instead, respondent argues that the minor children's hearsay statements did not demonstrate circumstantial guarantees of trustworthiness in this case. "There is no complete list of factors to consider when determining whether a statement has 'particularized guarantees of trustworthiness.'" *Int'l Union, United Auto, Aerospace & Agricultural Implement Workers of America*, 273 Mich App at 42. Instead, a court must examine the "totality of the circumstances" and "consider all factors that add to or detract from the statement's reliability." *Id.*, quoting *People v Katt*, 468 Mich 272, 290-291; 662 NW2d 12 (2003).

Respondent argues that the minor children had been coached by their grandmother to make statements indicating that he committed acts of domestic violence toward the children's mother. However, there was no testimony or evidence supporting that the grandmother coached the minor children. Also, most of the minor children's statements regarding respondent's domestic violence occurred during role playing. Mayle testified that role playing therapy and play therapy with figurines are not susceptible to manipulation from adults because there are no leading questions and the only directive to the child is to pretend to be a person. Mayle testified that, in her experience in using role playing therapy, a child could not be coached to act out a role in a specific way. Mayle also testified that she did not provide the minor children with advance warning that they would be role playing. Accordingly, Mayle testified that she did not believe that the minor children had been coached in their responses in this case because the children's words and actions were "always very congruent." Additionally, Mayle explained that she did not believe that the minor children were coached because they used language that an adult would not instruct them to use. For example, one of the minor children said at one point that "my dad's like a wolf in the head." Mayle also explained that the same child used the word "c---" during role playing, which was not typical language for a five-year-old child.

Respondent also attacks Mayle's credibility on appeal. However, Mayle testified that the minor children's grandmother did not influence her testimony. And, the trial court explicitly found that Mayle was not biased in favor of the minor children's grandmother; a finding that we afford deference to on appeal. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

Additionally, there is no indication in the record that the children were incapacitated, the minor children made consistent statements, the minor children's statements were given voluntarily during therapy, and the content of the children's statements indicated that they had personal knowledge of respondent's domestic violence. The trial court's holding that the minor

children's hearsay statements had the necessary circumstantial guarantees of trustworthiness and the trial court's resulting application of the hearsay exception found in MRE 803(24) to the children's statements to Mayle regarding domestic violence was not an abuse of discretion. *Utrera*, 281 Mich App at 15 (review is for an abuse of discretion).

Respondent also argues that the trial court erred in finding that grounds for termination of his parental rights existed under MCL 712A.19b(3)(g) and (j). To terminate parental rights, a trial court must find that the existence of a statutory ground for termination in MCL 712A.19b has been met by clear and convincing evidence. *In re McIntyre*, 192 Mich App 47, 50; 480 NW2d 293 (1991). A trial court's factual findings in terminating parental rights, including a finding that a ground for termination has been established and a finding that termination was in a child's best interests, are reviewed for clear error. MCR 3.977(K); *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000).

Respondent specifically argues that the trial court should have considered his efforts during the course of this case to address the barriers to reunification. Respondent notes that he engaged in several therapy services. Respondent also notes that he received parenting education through a therapist and that he made progress. Respondent correctly asserts that his compliance with those parts of his service plan was evidence of his ability to provide proper care and custody for the minor children. See *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003) (recognizing that a "parent's *compliance* with the parent-agency agreement is evidence of her ability to provide proper care and custody"). However, there was strong evidence that domestic violence, perpetrated by respondent, occurred in front of the minor children in the past and that respondent did not comprehend at the time of the termination hearing how devastating domestic violence was for the minor children. Additionally, respondent admitted that he did not have adequate housing at the time of the termination hearing. Moreover, a parent's mere participation in and benefit from services is insufficient; rather, a parent must demonstrate sufficient compliance with and benefit from services to address the problem targeted by those services. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). The evidence did not support that respondent had sufficiently benefitted. Additionally, a trial court may rely on a respondent's history of failing to provide care and custody in finding that there was no reasonable expectation that the respondent would be able to provide proper care and custody within a reasonable time. *In re Archer*, 277 Mich App 71, 75-76; 744 NW2d 1 (2007). A trial court may also rely on a parent's history in determining that a child would be harmed if returned the parent's home. *Id*. Accordingly, on the record, the factual elements of MCL 712A.19b(3)(g) and (j) were met and the trial court did not clearly err in finding by clear and convincing evidence those two grounds for termination of respondent's rights. MCR 3.977(K); *Trejo Minors*, 462 Mich at 356-357 (review is for clear error).

Respondent also argues that petitioner did not make reasonable efforts to reunify the minor children with him or to rectify the conditions that led to the removal of the children. This issue is not preserved because there is no indication that respondent objected to his service plan at the time it was adopted. *Frey*, 297 Mich App at 247. Our review is for plain error affecting substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011); *Utrera*, 281 Mich App at 8.

Generally, "petitioner must make reasonable efforts to rectify conditions, to reunify families, and to avoid termination of parental rights," *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008), except where aggravated circumstances exist under MCL 712A.19a(2) [they do not exist in this case]. Here, the record indicates that respondent was provided with significant services: a psychological evaluation, supervised parenting time (until it was suspended in the best interest of the minor children), case management services, family team meetings, a mental health assessment, a substance abuse assessment, individual counseling, parent education counseling, a referral to the Woodlands Behavioral Healthcare Network, and a food program. Respondent has not shown plain error with respect to his argument that petitioner did not make reasonable efforts to reunify him with his children or to rectify the conditions that led to the removal of the children. *VanDalen*, 293 Mich App at 135 (review is for plain error).

Finally, while not argued by respondent, we find no clear error in the trial court's finding that it was in the minor children's best interests to terminate respondent's parental rights based on the minor children's need for stability. MCR 3.977(K); *Trejo Minors*, 462 Mich at 356-357 (review is for clear error).

Affirmed.


/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher

-8-